**Betty Jane NELSON,
Petitioner-Appellant,**

v.

**SECRETARY OF HEALTH & HUMAN
SERVICES, Respondent-Appellee.**

**No. 84–1007.**

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1985.

Decided Aug. 15, 1985.

John T. Mannings, Wisconsin Rapids, Wis., for petitioner-appellant.

Steven J. Plotkin, Thomas D. Sykes, Asst. U.S. Attys., John R. Byrnes, U.S. Atty., Madison, Wis., for respondent-appellee.

Before CUMMINGS, Chief Judge, and WOOD, Circuit Judge, and GARZA, Senior Circuit Judge.*

PER CURIAM:

Betty Jane Nelson ("Nelson"), the claimant in this proceeding to recover Social Security disability benefits, appeals from a summary judgment affirming the denial of benefits by the Secretary of Health and Human Services ("the Secretary"). We find that the evidence supports the conclusion that Nelson is capable of performing light work, and that there was no error in determining the issue of disability through the application of the Medical-Vocational guidelines which have been promulgated under the Social Security Act. We therefore affirm the district court's order granting summary judgment in favor of the Secretary.

Nelson applied for Social Security disability benefits in 1981. A hearing was conducted before an Administrative Law Judge ("ALJ") of the Department of Health and Human Services. The ALJ concluded that Nelson was not disabled.

Nelson was fifty-three years old at the time of the hearing. She has an eighth-grade education, and has spent the majority of her working life employed as a janitor. Nelson testified that she stopped working in 1981 because of pain in her legs and back, and that she continues to suffer from pain in various places throughout her body. She also testified that she takes

Motrin for the pain and Dyazide to control her blood pressure. The ALJ heard testimony from Nelson and her husband, and also considered medical reports from three physicians, one of whom was her personal doctor.

The ALJ found that Nelson was incapable of performing her past work as a janitor. He also found that Nelson suffered from gross obesity, degenerative disc syndrome, moderately severe degenerative joint disease in her right ankle, and that she had a history of back strain. Despite these infirmities, the ALJ concluded that Nelson had the residual functional capacity to perform substantially all of the activities associated with light work as that term is defined in the regulations promulgated under the Social Security Act. See 20 C.F.R. § 404.1567(b).

Having concluded that Nelson was capable of engaging in light work, the ALJ determined whether Nelson was disabled through application of the Medical-Vocational guidelines which are summarized in (what is commonly called) the grid.[1] See 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2. The ALJ concluded that Nelson was not disabled under the guidelines summarized in the grid.

The Secretary's Appeals Council approved the ALJ's decision on December 15, 1982. Nelson then sought judicial review of the Secretary's decision. The district court denied Nelson's motion for summary judgment and affirmed the decision of the Secretary. This appeal followed.

Nelson's primary argument on appeal is that the ALJ's findings do not support the conclusion that she is capable of performing light work.[2] In the regulations promul-

* The Honorable Reynaldo G. Garza, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The grid's purpose, as well as its attributes and shortcomings, have been explained before and will not be reiterated here. See Cummins v. Schweiker, 670 F.2d 81, 82–83 (7th Cir.1982).

2. As a preliminary matter, Nelson contends that the case should be remanded to the district court because the district court failed to address

this argument. This is simply not so. In the district court, as in this court, Nelson argued that the ALJ's findings were fatally inconsistent with the Secretary's definition of light work. The district court rejected this contention, and concluded that the ALJ's finding regarding Nelson's ability to perform light work was supported by substantial evidence.

Similarly, Nelson contends that the case should be remanded because the district court failed to address her contention (which is also raised on appeal) that the grid should not have

gated by the Secretary, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must be able to do *substantially all* of these activities.

20 C.F.R. § 404.1567(b) (emphasis added). Nelson argues that the ALJ's findings regarding her physical impairments are fatally inconsistent with the regulation's definition of light work.

■ The ALJ made several findings regarding Nelson's physical condition and abilities to perform work related functions. In particular, he found that Nelson suffered from degenerative joint disease in her right ankle, and was therefore incapable of "using her right foot for repetitive movement, as in operating foot controls." The ALJ further found that Nelson would be capable of performing work related functions except those requiring: fine manipulation of her hands; bending and squatting; lifting objects weighing more than twenty pounds; or standing and walking more than one to four hours per day. Nelson does not contend that these findings are not supported by substantial evidence; rather, she suggests that they negate a conclusion that she is capable of performing light work.

We are not persuaded that these findings are inconsistent with the conclusion that Nelson is capable of performing light work. With the exception of being able to use her right foot for repetitive movements, it appears that Nelson is capable of engaging in all of the activities which are by definition associated with light work. She is, for example, capable of lifting up to twenty pounds; walking and standing up to four hours per day; and using both arms and her left foot for the pushing and pulling of arm or leg controls. Nelson's ability to engage in these activities satisfies the regulation's requirement that the worker must be capable of performing "substantially all" of the activities associated with light work. *See* 20 C.F.R. § 404.1567(b).

Nelson next argues that the grid should not have been applied in this case because she suffers from pain. The ALJ found that Nelson testified credibly as to her subjective complaints, but that the medical evidence presented did not support the conclusion that the pain of which Nelson complained would be constant, intractable, and disabling. Nelson contends that the ALJ erred in utilizing the grid in light of the finding that Nelson's testimony concerning pain was credible.

The Medical-Vocational guidelines outlined in Appendix 2, and summarized in the tables found in Appendix 2, "do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments." 20 C.F.R. Part 404, Subpart P, App. 2 § 200.00(e)(1). The regulations "recognize that some claimants may possess limitations not factored into the guidelines" and "provide that the rules will be applied only when they describe a claimant's abilities and limitations accurately." *Heckler v. Campbell*, 461 U.S., 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66 (1983). Thus, where an individual is rendered disabled because of a nonexertional impairment, such as pain, the grid is inapplicable; a determination of disabled or not disabled is then reached through the testimony of vocational experts who can indicate what work, if any, the claimant is capable of performing.

been applied because she suffers from pain, which is considered a nonexertional impairment. This contention is also without merit. The district court reviewed several of the medical reports which were considered by the ALJ, and agreed that they did not support the conclusion that Nelson experienced pain of a disabling character. The district court went on to hold that the ALJ's conclusion was supported by substantial evidence, and that there was no error in applying the grid to determine the issue of disability.

■ The fact that a claimant suffers from a nonexertional impairment does not, however, immediately preclude utilization of the grid. "[B]efore reaching the conclusion that the grid will not be applied because [the] claimant alleges nonexertional limitations, those nonexertional limitations must be severe enough to restrict a full range of gainful employment at the designated level." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 537 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In this case, Nelson testified that she experienced pain; the ALJ credited her testimony, but was not persuaded that the pain was so severe as to be disabling. This conclusion was properly based on the absence of medical evidence which would support the conclusion that the pain would be disabling. *See* 42 U.S.C. § 423(d)(5)(A) (medical evidence must support conclusion that claimant is disabled due to pain). Moreover, when read as a whole, the findings reflect that the ALJ was persuaded Nelson could perform a variety of work related functions despite the fact that she might experience some discomfort in the process. The record fully supports this view. Consequently, we conclude that the ALJ properly utilized the grid in this case.

■ Lastly, Nelson argues that the case should be remanded in order for the ALJ to make findings on whether Nelson's ability to work is affected by the side effects of the prescription drugs she uses for pain and high blood pressure. The ALJ discussed Nelson's use of Motrin and Dyazide in his opinion; he did not, however, make specific findings on this matter. Nelson contends that the ALJ had a duty to make specific findings on this question under *Schmoll v. Harris*, 636 F.2d 1146 (7th Cir. 1980). This assertion is without merit. In *Schmoll*, the ALJ found specifically that the claimant's use of Librium had no affect on her ability to engage in any substantial gainful activity. This court reversed and remanded because there was no evidentiary support for that finding. The court did not hold that an ALJ has a duty to make specific findings concerning the side effects of prescription drugs.

■ We view Nelson's argument on this score as a means of asserting that the ALJ's finding concerning Nelson's ability to engage in those activities associated with light work is not supported by substantial evidence. Nelson testified that she does not drive because she is on medication. She also indicated that the prescription drug Motrin, which she takes for pain, makes her tired. Stronger testimony came from her husband, Robert Nelson. Mr. Nelson testified that the medication Mrs. Nelson uses causes her to seem "[l]ike she's swimming half the time." There is no other evidence, subjective or objective, concerning the side effects of the prescription drugs Nelson uses for pain and high blood pressure. We are not persuaded that what evidence there is on this issue in any way detracts from the ALJ's finding that Nelson is capable of performing those activities associated with light work. The conclusion that Nelson is capable of performing light work is therefore supported by substantial evidence, and cannot be disturbed.

AFFIRMED.