Eugene WARMOTH, Plaintiff-Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.

No. 85–2835.

United States Court of Appeals, Seventh Circuit.

Submitted June 17, 1986.*

Decided Aug. 21, 1986.

As Amended Sept. 2, 1986.

Randall J. Manus, Freeport, Ill., for plaintiff-appellant.

Jeffrey M. Teske, Dept. of H.H.S., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and BAUER and WOOD, Circuit Judges.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

**PER CURIAM.**

██ The Medical-Vocational Guidelines (or "grid") found at 20 C.F.R. Part 404, Subpart P, Appendix 2 (1985), is a useful starting point and may provide a sufficient basis to evaluate whether a significant number of jobs exists in the national economy which a social security disability claimant can perform when he is unable to return to his past relevant work and suffers from a non-exertional impairment. *Nelson v. Secretary of Health and Human Services*, 770 F.2d 682, 684–85 (7th Cir.1985) (per curiam). Application of the grid is precluded, however, in cases where a claimant's non-exertional limitation restricts the full range of employment opportunities at the level of work that he is physically capable of performing; in such cases, resolution of the issue generally will require consultation of occupational reference materials (see 20 C.F.R. § 404.1566(d) (1985)) or the services of a vocational expert. *Id.;* see also *Heckler v. Campbell*, 461 U.S. 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66 (1983) ("[T]he regulations provide that the rules [of the grid] will be applied only when they describe a claimant's abilities and limitations accurately.").

Appellant Eugene Warmoth complains that the Administrative Law Judge ("ALJ") used the grid "exclusively" to determine that he was not disabled. Warmoth asserts that he is unable to work in an environment where any respiratory irritants are present and argues that the ALJ's conclusory statement that "most of the jobs which make up the basis for the rules in Table No. 1 [of the grid] are performed in dust and fume-free working environments" is insufficient to show job availability. We agree and therefore reverse the district court's grant of summary judgment in favor of the Secretary and remand for further proceedings.

Warmoth, now 42 years old and a high school graduate, last worked in August 1980. He traces his respiratory problems to a 1980 industrial accident at Kane International of Rockford, Illinois. He worked as a maintenance supervisor in the company's filter department[1] and was attempting to clear a machine blockage when the machine opened and spilled toxic toluene diisocyanate[2] on his face. This high intensity exposure, combined with the day-to-day exposure to this noxious substance during Warmoth's one-and-a-half years of maintenance work at Kane International, caused the claimed respiratory damage. Following a hearing, the ALJ found that Warmoth suffers from a respiratory disorder but that the impairment neither met nor equalled the level of severity required by the Listing of Impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P; a severe heart attack which hospitalized Warmoth shortly before the hearing was thought not to be disabling because the condition "will not meet or equal the level of severity required by the Listings for 12 continuous months."[3] The ALJ also determined that

---

1. Warmoth's work experience also includes jobs as a truck and bus driver and auto glass installer.

2. Toluene diisocyanate is a toxic chemical used to manufacture flexible polyurethane foams and to produce polyurethane coatings for lacquers and wood finishes.

3. Warmoth does not challenge these findings though he claims that since his heart attack he has experienced increased tiredness and is unable to lift more than three pounds.

   The only medical evidence on Warmoth's heart condition available at the time of the hearing characterized the attack as "not high-grade, being 30–40% in severity" and recommended a "[p]rogressive increase in activity with a walking program;" the record contains no evidence which would suggest that the condition was permanent or totally disabling, and Warmoth does not contend otherwise. The record, therefore, contains substantial evidence to support the ALJ's determination that Warmoth's "recent heart attack would ... preclude him from lifting heavier objects and from repetively [sic] bending, stooping, or climbing but ... not impose additional significant limitations beyond those related to his breathing impairment."

   On July 10, 1986, following the submission of this appeal for decision, Warmoth's attorney moved the court to take judicial notice of a Social Security Administration determination dated March 12, 1986 awarding social security disability benefits to Warmoth based on his September 15, 1985 reapplication. We granted the motion on July 14. In his decision, the

Warmoth "is unable to return to his past relevant work because his jobs required either heavy lifting or exposure to respiratory irritants" though he still "retains the residual functional capacity to perform [a wide range of] sedentary work on a sustained basis." Relying on the grid alone (and referencing Rule 201.28 of Table No. 1 as his guide) to show the availability of jobs, the ALJ concluded that Warmoth is not disabled.

Warmoth does not seriously challenge the ALJ's finding that he can still do sedentary work, and we conclude that the record contains substantial evidence to support the finding since no physician ever suggested that Warmoth is totally disabled from all types of work. Warmoth instead focuses his argument on the ALJ's use of the grid without more to show that "there are a significant number of jobs existing in the national economy" which Warmoth can perform even with his respiratory ailment; the argument concludes that the ALJ's decision therefore lacks the requisite substantial evidence to support the conclusion that Warmoth is not disabled.[4]

The various medical opinions unanimously agree that Warmoth cannot work in environments where respiratory irritants are present. One of Warmoth's treating physicians, Dr. do Pico, stated that Warmoth has residual hyperactive airways but that he should be able "to performa [sic] gainful employment in environments free of respiratory irritants." (R. 9 at 114). Another treating physician, Dr. Main, reported that Warmoth "must avoid" exposure to "many environmental agents, such as smoke, [and] perfume...." (R. 9 at 151). Dr. Sengal, a physician who completed a residual functional capacity assessment of Warmoth at the request of the Social Security Administration, also felt that Warmoth must "[a]void dust, fumes, perfume and other irritants." (R. 9 at 144). Such environmental restrictions, contrary to the ALJ's finding, could have more than a minimal effect on the types of occupations that fall within unskilled, sedentary work.

■ In a recent Social Security Ruling,[5] the Secretary explains by example how to evaluate the effect that various environmental restrictions have on work generally:

Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.

Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.

Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational refer-

---

disability examiner concluded that from all appearances Warmoth's "combined mental [affective or mood disorder] and physical [arterial sclerotic heart disease, asthmatic bronchitis and musculoskeletal back pain] impairments equal listing level severity as of 2–5–84 [the date of Warmoth's heart attack]." But the file on Warmoth's first application was not available for the examiner's review at the time of his decision, and so he determined that the disability began on April 25, 1984 (the day following the ALJ's denial of Warmoth's first application) though allowing "for possible earlier onset to 2–5–84 due to mental involvement." The Administration's March 12 determination therefore does not render the present appeal moot, nor does it add to or detract from our analysis.

**4.** As a result of the ALJ's determination that Warmoth is unable to return to his usual occu-

pation, it was necessary for the Secretary to produce evidence to establish the existence of alternative "substantial gainful employment" which exists in the national economy and which he could perform. *Tom v. Heckler,* 779 F.2d 1250, 1253 (7th Cir.1985).

**5.** Social Security Rulings are "final opinions and orders and statements of policy and interpretations that have been adopted by the [Social Security] Administration and that are not published in the FEDERAL REGISTER...." 20 C.F.R. § 442.408 (1985). Once published, a ruling is "binding on all components of the Administration," (*id.*) including ALJs, and is to be relied upon as precedent in determining cases where the facts are basically the same. See *Johnson v. Heckler,* 769 F.2d 1202, 1205 (7th Cir.1985).

ence materials or the services of a VS [vocational specialist].

Social Security Ruling 85–7 at 29 (Jan. 1985). The ALJ's failure to substantiate his finding that most unskilled, sedentary jobs "would not be ruled out by the claimant's nonexertional limitations imposed by his respiratory impairment" with any authoritative references or other evidence directly conflicts with the Secretary's policy statement on the issue and runs contrary to ordinary experience. Compare *McLamore v. Weinberger*, 538 F.2d 572, 575 (4th Cir.1976) (Secretary's decision supported by substantial evidence when it is within common knowledge and experience of ordinary men).

Approximately 85 percent of the 200 unskilled, sedentary occupations that exist throughout the national economy are in the machine trades and bench work categories. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(a) (1985). But the Secretary's regulations do not further contain such relevant evidence or other material to support the finding that Warmoth can still perform a significant number of these jobs. The Fifth Circuit, on the other hand, observed that "[m]achine trades and bench work by their nature often involve exposure to dust, fumes, and other suspended particulates irritating or intolerable to persons afflicted with respiratory ailments." *Thomas v. Schweiker*, 666 F.2d 999, 1005 n. 8 (5th Cir.1982) (per curiam). Similarly, it is hard to conceive of many unskilled, sedentary jobs that are performed in surroundings free of cigarette smoke, perfume and other like irritants which Warmoth cannot tolerate.

True, some cases will be obvious in that the non-exertional limitation will have very little effect on, or will significantly erode, the range of work remaining than an individual can perform; in such cases, reference to the grid may be all that is necessary. In line with the regulations which provide for the grid's use as "a framework" in cases involving non-exertional impairments, see 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2) (1985), the Secretary has instructed his personnel as follows:

> A particular ... nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. The person, therefore, comes very close to meeting a table rule which directs a conclusion of 'Not disabled.' On the other hand, a[ ] ... nonexertional limitation may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of 'Disabled.'

Social Security Ruling 83–14 at 205 (CE 1983). But other cases (those falling between the two extremes) are more complex and generally will necessitate additional evidence to determine the effects of the nonexertional limitation on the job base. *Id.* While a vocational expert's specialized knowledge undoubtedly would be helpful in the present case, this is not to say that testimony from such an expert is required in this and every other case involving a non-exertional impairment, see 20 C.F.R. § 404.1566(e) (1985) (Secretary may use his discretion in employing the services of a vocational expert); rather, we only require that there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. *Nelson v. Secretary of Health and Human Services*, 770 F.2d at 684–85; see also *Clark v. Heckler*, 733 F.2d 65, 69 (8th Cir.1984) (per curiam); *Ferguson v. Schweiker*, 641 F.2d 243, 247–48 (5th Cir.1981). The record in the present case admits of none. We therefore conclude that the Secretary erred when he in effect summarily took administrative notice that there is a significant number of unskilled, sedentary jobs in the national economy that Warmoth can perform. See *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982) (ALJ must determine "in a responsible manner" whether nonexertional impairments would interfere with type of jobs claimant can exertionally perform). It may be that Warmoth can still perform a significant number of jobs

which exist in the national economy; however, the present record does not support that determination.

Because the record is without substantial evidence to support the Secretary's decision, we REVERSE the grant of summary judgment and REMAND to the Secretary for further proceedings.