**Derek JOHNSON, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 86 C 1755.**

United States District Court, N.D. Illinois, E.D.

Nov. 26, 1986.

Frederick J. Daley, Frederick J. Daley, Ltd., Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty. by Margaret C. Gordon, Asst. U.S. Atty., Donna Morros Weinstein, Chief Counsel, Region V, Dept. of Health & Human Services, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

This order concerns both parties' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, defendant's motion is granted and plaintiff's motion is denied.

## I. FACTS

Plaintiff Derek Johnson brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the defendant Secretary of Health and Human Services (Secretary) in which plaintiff was denied Social Security benefits.[1] Plaintiff was 34 years old at the time of the Secretary's decision. Plaintiff is a high school graduate and has completed two years of art school. Plaintiff has been employed since 1972 at various restaurants as a waiter and captain waiter. On December 4, 1981, plaintiff severely lacerated his right hand injuring tendons in his middle and ring fingers. Plaintiff's dominant hand is his right hand. Since the injury and subsequent surgeries, plaintiff complains of pain and loss of manual dexterity in his right hand. Although therapy has been successful in reducing the level of nonexertional pain suffered by plaintiff, plaintiff indicates continued difficulty using the hand and discomfort on exertion.

At the administrative hearing, plaintiff's treating physician, Dr. Hall, testified that plaintiff's condition rendered him permanently unable to make a "power pinch" or "power grip" or use the right hand for any fine dexterous activity. Dr. Hall indicated that plaintiff could occasionally lift and carry up to ten pounds in his right hand and could use the hand for simple grasping but could not use the hand for fine manipulation or the pushing and pulling of arm controls. Dr. Hall stated that given the serious and permanent nature of plaintiff's condition, plaintiff's injury qualified for a finding of disability under the Secretary's listing in 20 C.F.R. Appendix 1, Subpart P, Regulation No. 4 § 1.13 (1986) which includes:

> Soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after the onset for salvage and/or restoration of a major function of the extremity, and such major function was not re-

stored or expected to be restored within 12 months after onset.

When questioned about plaintiff's mental status, Dr. Hall repeatedly indicated his lack of expertise in rendering any opinion concerning plaintiff's mental health. After persistent questioning by plaintiff's attorney and a short recess in the hearing, Dr. Hall hesitantly testified that plaintiff exhibited tendencies often associated as schizophrenic and that plaintiff may carry the diagnosis of some form of schizophrenia.

At the request of the Illinois State Agency, Dr. Kelly consultatively examined plaintiff prior to the hearing. Dr. Kelly reported the plaintiff had complained of pain but told Dr. Kelly he could lift and carry up to 15 pounds in his right hand. Dr. Kelly stated the injury had significantly reduced the grip strength and range of motion in the third and fourth digits of plaintiff's right hand. Dr. Kelly also reported that the plaintiff had no difficulty in dressing or undressing and no difficulty in turning a door knob with his right hand.

After reviewing the testimony and relevant medical evidence, the plaintiff was found to suffer from severe flexion contractures and related problems on two fingers of his right hand. Although it was noted that the impairment precluded plaintiff from engaging in his past relevant work, the Administrative Law Judge (ALJ) took the position that the substantial weight of evidence showed that plaintiff had retained the residual functional capacity to perform a full range of light work. Considering plaintiff's vocational factors, the ALJ relied on the medical-vocational guidelines which directed a finding of not disabled.

## II. DISCUSSION

Plaintiff appeals from the Secretary's denial of benefits asserting a number of arguments. First, plaintiff asserts the ALJ failed to correctly find plaintiff's impairment met the level of severity required under listing § 1.13. Second, plaintiff con-

---

**1.** The Secretary adopted the opinion of the Administrative Law Judge (ALJ) that plaintiff was not disabled. Thus, the ALJ's ruling became the final decision of the Secretary.

tends that the ALJ incorrectly found him capable of performing light work and improperly applied the medical-vocational guidelines in determining he was not disabled. Finally, plaintiff argues that the ALJ erred in dismissing plaintiff's request for a consultative psychological examination under 20 C.F.R. § 404.1517 (1986).

Before addressing plaintiff's arguments, this court notes that its role is limited to a determination of whether substantial evidence supports the Secretary's decision. 42 U.S.C. § 405(g). Substantial evidence means such evidence that a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In applying this test, this court is bound to consider factual findings by the Secretary conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).

## A. *§ 1.13 Listing*

Plaintiff first challenges the ALJ's determination that plaintiff's impairments did not qualify for a finding of disability under listing § 1.13. Under § 1.13, a finding of disability is required when an individual's impairment results in a loss of the major function of an upper extremity. In reaching the determination that plaintiff's injury did not meet § 1.13, the ALJ stated: "§ 1.13 requires soft tissue injuries of an upper or lower extremity, not a portion thereof. Plaintiff contends that this interpretation of § 1.13 is erroneous and that the fingers themselves constitute an upper extremity under § 1.13. Thus, plaintiff asserts that the injury to his two fingers resulted in the loss of the major function of an upper extremity.

As the term "upper extremity" is not defined in § 1.13, any attempt to ascertain its intended meaning must involve an analysis of the purpose of the Secretary's listings. According to 42 U.S.C. § 423(d)(1)(A), a person will be found disabled within the meaning of the Social Security Act (SSA) if he is unable to perform any substantial gainful activity "by reason of any medically determinable physical or

mental impairment...." A person is considered disabled only when his physical or mental impairments are of such severity that he is unable to perform his previous work and cannot, considering his age, education, and experience, participate in any other type of substantial employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In accord with the foregoing statutory directive, the Secretary promulgated regulations for gauging the severity of various impairments and weighing their impact on an individual's ability to engage in various types of work. To aid in identifying those impairments with ramifications so severe that an individual is presumptively disabled (i.e., unable to engage in any kind of substantial work), the Secretary developed disability listings. However, a person unable to meet the requirements of any particular listing may still be found disabled if his impairments preclude him from engaging in either heavy, medium, light, or sedentary work. The Secretary defines light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Sedentary work differs from light work in that it requires good use of hands and fingers for repetitive hand-finger actions but less walking, standing and lifting. *Id.*

 Analyzing the meaning of § 1.13 in light of the foregoing makes clear that

an impairment which results in a major loss of function of an upper extremity must preclude the individual from even performing light or sedentary work. Social Security Ruling 82–51 notes that even when a person's upper extremity is amputated above the elbow, a person may still be capable of performing a full range of light work. Since the loss of one or more fingers from the dominant hand does not necessarily preclude an individual from engaging in light work, an upper extremity in the context of § 1.13 must refer to a more substantial portion of the arm than the fingers. For § 1.13 to be consistent with Congress' definition of disability under the Social Security Act, a § 1.13 disability can only be found where loss of major function of an upper extremity occurs and the functioning of that upper extremity is essential to performing a full range of any class of work. Severe injury or amputation of two fingers does not appear to qualify under this reading of upper extremity as it would be unreasonable to presume such an impairment would automatically preclude a full range of light work. As such, plaintiff's argument that injury to two fingers constitutes the loss of major function of an upper extremity was properly dismissed by the ALJ. Under the circumstances in this case, the ALJ's determination regarding § 1.13 is supported by substantial evidence.

## B. *Findings Under 20 C.F.R. § 404.1567(b)*

The second set of issues raised by parties' motions stem from the ALJ's finding that plaintiff was capable of a full range of light work as defined in 20 C.F.R. § 404.1567(b). After ruling on plaintiff's § 1.13 listing claim, the ALJ determined that the severity of plaintiff's injury prevented him from resuming his past relevant work. Deciding that plaintiff had the capacity to perform substantially all of the requirements of light work, the ALJ turned to the medical-vocational guidelines (hereinafter the "grid") to determine if plaintiff, in light of his age, education and past work experi-

ence, was able to engage in a wide range of light employment. Applying grid Rule 202.20, the ALJ concluded that plaintiff was capable of performing a full range of light work and was not disabled.

Plaintiff assails both the ALJ's finding that plaintiff was capable of light work and the ALJ's use of the grid. Plaintiff first argues that evidence presented at the hearing does not support the ALJ's determination that plaintiff was capable of performing light work. Second, plaintiff argues that even if he meets the requirements for light work, use of the grid was inappropriate in light of plaintiff's nonexertional impairments.

■ Plaintiff's first contention is easily dismissed as substantial evidence supports the ALJ's determination. According to the definition of light work,[2] a claimant need only be capable of performing substantially all of the following activities:

(1) lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;

(2) walking and standing for substantial periods of time; and/or

(3) sitting for extended periods with some pushing and pulling of arm or leg controls.

Plaintiff reads the foregoing to require a claimant be able to perform the enumerated lifting and carrying activities with either hand. This court disagrees. In *Nelson v. Secretary of Health and Human Services,* 770 F.2d 682 (7th Cir.1985), the court was faced with a claimant who could only perform the pushing and pulling of leg controls with her left foot. *Nelson,* 770 F.2d at 684. Despite the fact the claimant suffered from a substantial impairment in her right ankle which limited her to only one to four hours of walking or standing per day, the court ruled that the claimant could perform substantially all of the activities associated with light work. *Id.*

■ Similarly, the fact plaintiff may not be capable of performing all the lifting requirements associated with light work

---

**2.** The text of 20 C.F.R. § 404.1567 is set forth in part IIA of this opinion.

with his right hand does not mean he is unable to perform light work. Statements by the plaintiff and reports from the consulting physician, Dr. Kelley, show plaintiff could grasp and carry up to 15 pounds with his right hand and use his right hand for such things as dressing himself and unlocking and opening doors. Plaintiff testified at the hearing that he could still perform certain types of jobs which he had previously held (i.e., captain waiter, clothing salesman) but was afraid no one would hire him because of his impairment. (R. 101–07.) Plaintiff also stated that he was capable of standing and walking for three hours at a time before experiencing discomfort in his feet. Examining the foregoing evidence in light of requirements of 20 C.F.R. § 404.1567(b) and the facts in *Nelson*, this court cannot say that the ALJ erred in finding plaintiff was capable of performing light work. The record contains substantial evidence to support the ALJ's determination that plaintiff met substantially all of the requirements under 20 C.F.R. § 404.-1567(b).

Next, plaintiff argues the ALJ improperly applied the grid in determining plaintiff was not disabled. Plaintiff asserts that given the testimony concerning his nonexertional impairments, use of the grid was inappropriate and testimony from a vocational expert was necessary to ascertain whether plaintiff was capable of performing a full range of light work. Since the ALJ declined to request the presence of a vocational expert at the hearing, plaintiff contends substantial evidence does not support the ALJ's conclusion of no disability.

■ The grid is a set of guidelines designed to assist the Secretary in determining whether a significant number of jobs exist in the national economy which a claimant can perform when he cannot return to his past relevant work and suffers from a nonexertional impairment. *Warmoth v. Bowen*, 798 F.2d 1109, 1110 (7th Cir.1986). The grid is used once it has been determined a claimant's impairments do not meet the requirements of a listing and the claimant is found capable of performing either heavy, medium, light or sedentary work. Application of the grid, however, is inappropriate where the severity of a claimant's nonexertional impairment restricts a full range of gainful employment at a designated level. *Nelson v. Secretary of Health and Human Services*, 770 F.2d 682, 685 (7th Cir.1985). Where the claimant's nonexertional impairments are found to meet this level of severity, occupational reference materials or the services of a vocational expert must be consulted to determine if claimant's nonexertional impairments significantly restrict the number of jobs available to the claimant at a particular class of work. *Warmoth*, 798 F.2d at 1110.

First, plaintiff contends pain and limited gripping ability caused a loss of dexterity in his right hand which resulted in a severe nonexertional impairment. Second, plaintiff points to various environmental restrictions in an attempt to show he suffered from significant nonexertional impairments which precluded use of the grid. With regard to the former, plaintiff argues that certain SSA guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h) foreclose use of the grid when a lack of dexterity is shown to exist. Plaintiff essentially asserts that those conditions limiting the use of his hand deprive him of the dexterity required to perform a substantial number of jobs classified as light work.

Plaintiff's reliance on the 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h), however, is misplaced since this section refers to requirements which must be met to find an individual is capable of performing a full range of sedentary work. This court is unable to accept plaintiff's attempt to analogize this section to his situation since light work, by definition, requires less dexterity than sedentary work. Indeed, the definition of light work states in relevant part:

> If someone can do light work we determine that he or she can also do sedentary work, *unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of*

*time.* 20 C.F.R. § 404.1567(b) (1985) (emphasis added).

■ Although courts have recognized pain may constitute a significant nonexertional impairment precluding use of the grid, the pain must be so severe as to restrict a full range of light work. *Nelson,* 770 F.2d at 685. Here, the plaintiff testified that the pain associated with his hand had significantly decreased since undertaking therapy and that some pain was present in performing certain turning and gripping motions with the right hand. (R. 94–96, 107.) The type of pain testified to by plaintiff does not appear to reach the level of severity required under *Nelson* to preclude use of the grid.

■ Plaintiff also points to certain environmental restrictions in an attempt to foreclose application of the grid. Plaintiff notes his limited ability to work around machinery or work at unprotected heights. He further states that he has a restricted capacity to work in areas involving exposure to marked changes in temperature and humidity as well as exposure to dust, fumes and gases. Yet, plaintiff did not attempt to illicit medical testimony from his physician concerning the nature and severity of these nonexertional impairments. Indeed, aside from environmental restrictions related to plaintiff's hand, the consulting physician's examination report of plaintiff provides no medical grounds for the existence and/or severity of the alleged restrictions. As plaintiff presented no medical evidence to support his alleged inability to work in areas which are subject to marked changes in temperature and humidity or which involve exposure to dust, fumes, and gases, this court will not disturb the ALJ's determination that these environmental limitations did not limit a full range of light work. Similarly, plaintiff's asserted restrictions around moving machinery and inability to work at unprotected heights are not significant enough to limit plaintiff's ability to perform a full range of light work. Thus, this court finds the ALJ's use of the grid appropriate and rules substan-

tial evidence supports the determination plaintiff is not disabled.

### C. *Mental Consultative Examination*

Finally, plaintiff argues the ALJ erred in dismissing his request for a consultative psychological examination under 20 C.F.R. § 404.1517. According to plaintiff, testimony by Dr. Hall suggesting plaintiff might suffer from some form of schizophrenia placed his mental health at issue. Plaintiff contends that given this testimony, the ALJ was required to order a consultative psychological examination prior to making a disability determination.

■ The ALJ, in carrying out his duty to afford a claimant a "full inquiry," is required to obtain such medical evidence through consultative services as the circumstances warrant. *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir.1977), *citing McGee v. Weinberger,* 518 F.2d 330, 332 (5th Cir.1975). The "full inquiry" duty does not require a consultative examination at government expense unless evidence shows such an examination is necessary to allow the ALJ to make a disability decision. *Turner v. Califano,* 563 F.2d at 671. Generally, where the medical evidence in a case includes a diagnosis of a mental condition impacting on a person's ability to perform a wide range of particular work, a consultative psychological examination should be ordered by the ALJ. *Murray v. Heckler,* 737 F.2d 934, 935 (11th Cir.1984); *Turner v. Califano,* 563 F.2d at 671; *Holloway v. Heckler,* 607 F.Supp. 71, 74 (D.Kan.1985).

■ In this case, the testimony of Dr. Hall provided an insufficient basis for ordering a consultative psychological examination. A review of Dr. Hall's testimony reveals the extreme reservations under which the doctor agreed to offer a medical opinion concerning plaintiff's mental status. When questioned by plaintiff's attorney, Dr. Hall repeatedly indicated his lack of expertise in rendering any opinion concerning plaintiff's mental health. Only after persistent questioning by plaintiff's attorney and a short recess in the hearing did Dr. Hall hesitantly testify that plaintiff's

# 450

tendency "to ramble a great deal" was characteristic of individuals often perceived as schizophrenic and that plaintiff may carry the diagnosis of some form of schizophrenia. (R. 78–79.) This court is simply unable to view the foregoing testimony as a diagnosis of a mental illness. The ALJ observed plaintiff's peculiar speech tendencies and was not persuaded that they had any significant impact on plaintiff's ability to perform a full range of light work. This court believes that the ALJ was within his discretion to refuse plaintiff a government funded psychological exam since sufficient evidence existed to allow a disability decision to be made. Accordingly, the judgment of the ALJ and the Secretary will not be disturbed.

## III. CONCLUSION

For the foregoing reasons, the Secretary's motion for summary judgment is granted, and plaintiff's motion is denied.

IT IS SO ORDERED.