Oren **SHIDLER**, Plaintiff,

v.

Otis R. **BOWEN**, Secretary of Health and Human Services, Defendant.

No. S 84–439.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 22, 1987.

David L. Hollenbeck, Valparaiso, Ind., for plaintiff.

Donald P. Moroz, Asst. U.S. Atty., South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This case is brought pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) for judicial review of the Secretary's final decision denying the plaintiff's application for disability benefits under Title II of the Social Security Act.

On April 21, 1982, the plaintiff applied for benefits which the administration denied both initially and upon reconsideration. Following a hearing on August 9, 1983, the Administrative Law Judge (ALJ) denied benefits in a decision dated March 22, 1984, which became final on June 28, 1984, when the Appeals Council declined review. The plaintiff filed for judicial review on July 19, 1984. The matter is before the court on cross-motions for summary judgment filed by the plaintiff on September 2, 1986, and by the defendant on December 2, 1986. Both sides having briefed their positions, the case is ripe for ruling.

### II.

The basic issue is whether denial of benefits is supported by substantial evidence with respect to the plaintiff's residual functional capacity (RFC) for work.

Substantial evidence is defined as that which a reasonable mind might accept as adequate to support a conclusion. If the record contains such support, the court must affirm absent an error of law, *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), *Fox v. Heckler*, 776 F.2d 738 (7th Cir.1985).

Review of the administrative decision involves examination of the whole record, followed by acceptance of any factual findings which are supported by substantial evidence. The court will not decide facts anew, reweigh evidence, or substitute its judgment. The review does involve the expectation that the ALJ has considered all relevant evidence and has stated reasons for conclusions sufficient to permit an informed review, *Delgado v. Bowen*, 782 F.2d 79 (7th Cir.1986), 42 U.S.C. § 405(g).

The record indicates that in 1984 Oren Shidler was a 44-year-old man who had completed eight grades and had attended part of the ninth. From 1969 to 1974 he worked as a truck mechanic. He was employed as a construction laborer and working foreman from 1974 to 1980, and has since that time remained unemployed.

Mr. Shidler initially filed for disability benefits on August 14, 1980, alleging disability since May 12, 1980 due to back and kidney problems. His claim was denied initially and on reconsideration. An earlier ALJ heard the claim on June 3, 1981, but the transcript was not included in the record. The first ALJ found the claimant to be capable of at least sedentary work despite lumbar sprain. Mr. Shidler did not seek judicial review of that claim.

In April of 1982, the plaintiff filed the application which resulted in this review, alleging disability since May 9, 1980, due to back problems. Denials followed. At the request of the plaintiff a hearing was held on August 9, 1983. Concluding that the plaintiff should be denied benefits, the ALJ found as follows:

1. The claimant met the disability insured status requirements of the Act on May 9, 1980, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since May, 1980.

3. The medical evidence establishes that the claimant has severe low back strain, chronic sinusitis and mild situational depression, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective complaints of disabling back, neck, shoulder and leg pain and numbness are not supported by the medical evidence and are not credible.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting more than twenty pounds at a time (20 CFR 404.-1545).

6. The claimant is unable to perform his past relevant work as a construction laborer and working foreman.

7. The claimant's residual functional capacity for the full range of light work is reduced by mild depression.

8. The claimant is 44 years old, which is defined as a "younger individual" (20 CFR 404.1563).

9. The claimant has a ninth grade education (20 CFR 404.1564).

10. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.-1569 and Rules 202.18 and 202.19, Table No. 2, Appendix 2, Subpart P., Regulations No. 4 would direct a conclusion of "not disabled."

12. The claimant's capacity for the full range of light work has not been significantly comprised by his additional nonexertional limitations. Accordingly, using the above-cited rules as a framework for decision making, the claimant is not disabled.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f)).

To evaluate disability, administrative regulations require a five step sequential process set forth at 20 C.F.R. § 404.1520, which essentially inquires as follows:

(1) Is the claimant presently employed?

(2) Is the claimant's impairment severe?

(3) Does the impairment meet or exceed one of a list of specific impairments?

(4) Is the claimant unable to perform his or her occupation?

(5) Is the claimant unable to perform any other work within the economy?

■ An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is not disabled. A negative answer at any point other than step 3, stops inquiry and leads to a determination that the claimant is not disabled, 20 C.F.R. §§ 404.1520 and 416.920(c) (1983); *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir.1985). The ALJ determined disability on the fifth step of the test, having recognized plaintiff's back strain as severe, and having found the plaintiff unable to return to his former work. Once the claimant has established these two factors, the Secretary must produce evidence to establish the existence of alternative substantial gainful employment in the national economy which the claimant could perform, *Tom v. Heckler*, 779 F.2d 1250 (7th Cir.1985).

The review of the court, therefore, turns to whether substantial evidence supports the ALJ's finding of the plaintiff's residual functional capacity (RFC) for the full range of light work, except for lifting more than 20 pounds.

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm controls. To be considered capable of performing a full range or wide range of light work, a claimant must have the ability

to do substantially all of these activities. If someone can do light work, that person is determined able to do sedentary work, unless additional limiting factors are indicated such as a loss of fine dexterity or inability to sit for long periods of time, 20 C.F.R. § 404.1567(b).

With respect to physical limitations the ALJ took into consideration the following medical evidence:

... the claimant suffered a myocardial infarction on December 3, 1976 (Exhibit B–21). Because of his young age, he was hospitalized in March, 1977 for coronary arteriography to determine the extent of his disease. The claimant had no complaints of chest discomfort, shortness of breath, orthopnea, or paroxysmal nocturnal dyspnea. A treadmill exercise test performed in 1977 was negative. An EKG was normal and the left ventriculogram showed only scar tissue replacement along the anterior surface of the left ventricle. Ventricular function and the coronary arteries were normal.

The medical record also contains several reports from Dr. E.L. Hollenberg who has been the claimant's treating physician for many years. On September 15, 1980, Dr. Hollenberg reported that the claimant was impaired by sinusitis because of the side effects (fatiguability) of infection. Diagnosis also included pyelonephritis and chronic low back pain, the etiology of which was unknown (Exhibit B–13). Range of motion studies of the lumbar spine performed in April, 1982 revealed forward flexion to 80 degrees, normal extension, right lateral bending to 30 degrees and left lateral bending to 25 degrees (Exhibit B–14). Treatment consisted of exercises and medication only. Dr. Hollenberg opined at that time that the claimant could not return to his usual occupation as a truck driver and was in need of vocational rehabilitation. Range of motion studies performed in November, 1982 showed normal flexion and extension, right lateral bending to 20 degrees and left lateral bending to 20 degrees and left lateral bending to 15 degrees (Exhibit B–17). Dr. Hollenberg

found no evidence of pain, paravertebral muscle spasm or neurological deficit. Kidney function studies of June, 1980 were reported as normal. In his most recent report of July 29, 1983, Dr. Hollenberg stated that the claimant's problems were primarily chronic sinusitis, chronic low back strain, moderate arthritis of the spine, and a tendency for urinary tract infections and prostatitis (Exhibit B–18).

On July 10, 1982, the claimant underwent a consultative examination with Dr. M. Christie at the request of the Administration (Exhibit B–16). The claimant stated that since a work-related injury of May, 1980, he had low back pain which radiated to both his arms and legs. The pain increased with bending and walking more than a short distance. He also complained of occasional paresthesias in both arms and legs. On physical examination, the claimant walked with a mild right limp and used a cane. He was able to flex his neck to only 5 degrees while extension was normal. Lateral side bending and rotation was to 45 degrees. Examination of the lumbar spine showed forward flexion to 70 degrees, extension to 15 degrees, and lateral side bending and rotation to 30 degrees. The claimant complained of pain at the extremes of motion of both the cervical and lumbar spines. There was no evidence of paravertebral muscle spasm and straight leg raising was negative bilaterally. Neurological examination was completely normal. X rays of the thoracolumbar spine did not show any structural abnormalities. Dr. Christie's impression was muscular low back pain which could be treated with physical therapy and non-steroidal anti-inflammatory agents. The examiner was of the opinion that the claimant was limited to sedentary and light work activities but could return to more vigorous activities once his symptoms improved.

In relationship to work activity, the record indicates that in July of 1981, an examining consultant found a capacity for

any work which would not require excessive bending or lifting (R. 152–153). An accompanying form indicated the ability to walk four hours, to lift both arms and 10–20 pounds, to reach, climb stairs and use hands and feet. In October of 1981, on the basis of the plaintiff's input, an examining doctor concluded that Mr. Shidler could sit for at least 45 minutes, stand for at least 15 minutes and walk two blocks or more (R. 130–140). In June of 1982 Dr. Stadler, upon examination of the plaintiff's file for the purpose of a residual functional capacity assessment, stated that the data was too scanty, but that he would suggest an RFC for light work (R. 204). In July of 1982, Dr. Christie determined that the plaintiff's ability to do sedentary and light duty activities would be limited in terms of any duties which required excessive lifting, carrying, bending, pushing, pulling or climbing stairs until his symptoms improved (R. 205).

Dr. Hollenberg, the plaintiff's physician, performed range of motion studies in May and November of 1982. On the second examination Mr. Shidler's flexion and extension were normal, and although lateral bending was more limited by ten degrees, there was no evidence of pain (R. 207).

The plaintiff's testimony relative to physical limitations indicated that he could carry 10 pounds about 100 feet (Tr. 51), that he has difficulty dressing and at times must have help (Tr. 60), that he experiences numbness in his legs after 15 minutes of sitting (Tr. 77) and that lengthy sitting and standing causes him problems (Tr. 64).

■ With respect to physical limitations, a person need not be able to do all of the activities within a category for the ALJ's finding to be affirmed. See *Nelson v. Secretary*, 770 F.2d 682 (7th Cir.1985), and *Fox v. Heckler*, 776 F.2d 738 (7th Cir.1985). The limitations indicated by the evidence do not negate a capacity for substantially all light work activities.

■ Although the record indicates some evidence of physical limitations, there is substantial evidence to support the ALJ's finding of a residual functional capacity for the full range of light work. Dr. Christie, an examining consultant, concluded that despite plaintiff's impairments, Mr. Shidler could perform both sedentary and light work if he would avoid certain excessive work activities until symptoms improved. (Tr. 205). Dr. Hollenberg, plaintiff's treating physician for many years, stated that, because he was the family physician, he felt that he was not in a position to judge plaintiff's disability (Tr. 20). Moreover, the medical findings on which Dr. Christie based his conclusion were quite similar to those obtained by Dr. Hollenberg in his treatment of plaintiff. Both Dr. Christie and Dr. Hollenberg found that plaintiff suffered from low back strain, and that he was limited in the range of motion of his lumbar spine (Tr. 202, 205, 207). However, as Dr. Christie pointed out, this limitation did not preclude plaintiff from performing sedentary and light work activities (Tr. 205).

Finally, the reports of the DDS physicians provided evidence that plaintiff could perform light work. Both of those physicians evaluated plaintiff's medical history, and both times concluded that, despite pain and limited motion of his back, plaintiff's medical condition did not limit his ability to work (Tr. 169, 174).

### III.

■ The remaining matter to consider is whether the record supports the finding that nonexertional impairments do not significantly limit Mr. Shidler's RFC. If such significant limitations exist at his work level, occupational materials or services of a vocational expert are needed to resolve the issue, and application of the grid is inappropriate, *Warmoth v. Bowen*, 798 F.2d 1109 (7th Cir.1986). The fact that a claimant suffers from nonexertional impairment does not immediately preclude utilization of the grid, *Nelson v. Secretary*, 770 F.2d 682 (7th Cir.1985).

Mr. Shidler asserts that pain significantly limits his ability to work. The plaintiff argues that he is unable to perform even

sedentary level work activity. Mr. Shidler testified that in sitting during the hearing he experienced pain across his back from hip to hip. (R. 72). He testified that he experiences immediate pain upon walking, this pain being located in the middle of the back, extending from side to side (R. 73–74). Plaintiff testified that he spends the better portion of his day lying in a recliner with the vibrator on in order to relieve his pain. (R. 75–76.) If he is forced to walk on inclines, such as steps, he experiences pain shooting up his back. (R. 76). He further indicated that numbness in his legs began after approximately 15 minutes of sitting. (R. 77).

■ Pain which is associated with a medically ascertainable cause may disable a person for purposes of the Social Security Act, if the medical condition can reasonably be expected to produce the pain, 42 U.S.C. § 423(d)(5)(A), *Sparks v. Bowen*, 807 F.2d 616 (7th Cir.1986). (*Sparks* does not control this case because that plaintiff's pain was found credible and her claim was denied for lack of any direct evidence of etiology.) See also *Nelson v. Secretary*, 770 F.2d 682 (7th Cir.1985). In reporting the medical evidence in this case, the ALJ referred repeatedly to the plaintiff's complaints of pain. As the hearing official, he had the opportunity to observe the plaintiff as he testified about the extent of his pain and about his daily activities. In reviewing the evidence the ALJ noted that at the administrative hearing of August 9, 1983, the claimant testified that his main medical problem is sinusitis and that he cannot return to work because of pain his back and right shoulder. His pain is aggravated by standing, and sitting causes pain in his back and hips, numbness in his legs, and makes him nervous. He stated that he could lift and carry a ten pound bag of potatoes approximately 100 feet. The claimant testified that he sits in a recliner with a vibrator and a heating pad for five hours per day which relieves some of his pain. His activities include visiting his parents once a week, reading, watching television, and helping his children care for their ponies. He said he uses a cane because of weak legs. The ALJ observed that the claimant had muscular arms and appeared to be in good health. His hands were calloused and firm and his fingernails were dirty.

■ The ALJ expressly found it incredible that Mr. Shidler's pain was disabling. His articulation of the finding could have been clearer in terms of his reasoning, but the ALJ has barely met the minimal level in having set out all the reports and by having addressed the plaintiff's complaints. See *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985). Substantial evidence supports the ALJ's conclusion and, therefore, the court will not disturb his credibility finding.

The plaintiff next argues against the ALJ's finding that he is mildly depressed, and that this mental impairment would not significantly limit his RFC. This issue revolves around the ALJ's preference for one examining specialist over the other. In arriving at his finding of mild depression he considered that just prior to the oral hearing of August 9, 1983, the claim was referred by his attorney to David S. Frank, Ed.D., for the purpose of determining his personality manifestations and pain apperception and to make a vocational diagnosis of his residual employability (Exhibit B–20). The results of the Minnesota Multiphasic Personality Inventory (MMPI) showed that the claimant had a great number of chronic physical complaints and was preoccupied with bodily functions which indicated psychoneurosis. He perceived his pain as being with him all the time. During the course of the clinical interview, the claimant stated that he had pain from the base of his skull to the middle of his shoulder blades and from his belt line to his knees. He stated that he had difficulty using his right arm, had numbness in his legs from sitting, and had a disturbed sleeping pattern. Dr. Frank stated that if he accepted as true all of the claimant's comments, the claimant would be found to be permanently and totally disabled. Subsequent to the oral hearing, the claimant underwent a ser-

ies of three psychiatric examinations ordered by the ALJ. The claimant was seen on December 5, 9 and 12, 1983, by Dr. R.B. Yuhn (Exhibit B–22). He complained of pain, weakness and numbness in his back and pain in his shoulder. The claimant initially told the examiner that he had to sit for long periods of time due to weakness and numbness in his back but later said that he could not sit too long when asked if he could do some sedentary type of work. Dr. Yuhn noted that the claimant's gait was poor but that he was not limping. The claimant used a cane to balance his gait. On mental status examination, the claimant was well oriented, had good contact with reality, denied having hallucinatory experiences and showed no delusional trends. Speech and thought content were well organized. He stated that he felt insecure and frustrated when thinking about the future but said he generally got over those feelings in a few hours. Memory, abstract thinking and judgment were intact. Dr. Yuhn found no overt psychopathology and opined that perhaps the claimant was suffering from a dysthemic disorder (neurotic depression with anxiety).

In concluding that the plaintiff suffered from mild depression the ALJ chose between the diagnoses of two qualified professionals who had personally met with the plaintiff. In evaluating the two reports the ALJ was not convinced that the claimant had a disabling mental impairment, having undergone a psychological evaluation just prior to the hearing despite a lack of history of psychological difficulties. This evaluation showed that the claimant was suffering from psychoneurosis. However, a subsequent series of examinations by a consulting psychiatrist revealed no overt psychopathology and showed only the possibility of a dysthemic disorder. Further, the ALJ noted that the claimant was not under treatment nor taking medication for a psychological problem.

The ALJ's opinion addressed the relevant evidence and adequately articulated reasons for his finding of mild depression over the more severe diagnosis suggested by Dr. Frank.

■ In cases where there are conflicting medical reports in the record, it is for the ALJ to determine the weight to be given to the various reports. *See Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985). This determination will be upheld by reviewing courts as long as it is supported by substantial evidence. *Strunk v. Heckler*, 732 F.2d 1357, 1362–64 (7th Cir.1984).

■ In this case, substantial evidence supports the ALJ's decision to credit Dr. Yuhn's conclusion over that expressed by Dr. Frank. Specifically, Dr. Yuhn examined plaintiff three times while Dr. Frank only observed him once (Tr. 214), 240). Moreover, Dr. Frank's conclusions were specifically conditioned on accepting plaintiff's subjective complaints as true (Tr. 217).

■ Finally, plaintiff was not under treatment nor taking any medication for a psychological problem (Tr. 10). Therefore, it was reasonable for the ALJ to conclude that plaintiff was not suffering from any disabling mental impairment and that his ability to perform light work was not affected by his mild situational depression.

The court concludes that the ALJ's application of the grid was supported by substantial evidence, and agrees with the defendant that *Warmoth v. Bowen*, 798 F.2d 1109 (7th Cir.1986) does not control. Plaintiff may be somewhat restricted in selecting jobs in the light range of work which would involve lifting beyond his capacity. Furthermore, he may want to avoid jobs involving the other discomforts about which he complains; however, the evidence has been found to support the ALJ's finding that neither plaintiff's pain nor his mental impairment qualify legally or factually as disabling, nor as significantly limiting his RFC.

The ALJ properly applied the sequential steps required by law and properly concluded that other jobs exist in significant numbers in the national economy. Under the rules provided in Appendix 2 to Subpart P of the Regulations No. 404, given his age,

education, past work experience and residual functional capacity for light work, the claimant falls within the framework of rules 202.18 and 202.19 which direct a conclusion that he is not "disabled."

Therefore, the court DENIES the plaintiff's motion for summary judgment and GRANTS summary judgment to the defendant. The Secretary's decision is AFFIRMED. SO ORDERED.