**Joyce O. COLLINS–MAAT, Plaintiff,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 87 C 6973.**

United States District Court, N.D. Illinois, E.D.

June 28, 1988.

Robert M. Hodge, Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty. by Mary S. Rigdon, Asst. U.S. Atty., Civil Div., U.S. Dept. of Justice, Chicago, Ill., Donna Morros Weinstein, Chief Counsel, Region V by Nancy M. Zaczek, Asst. Regional Counsel, Dept. of Health and Human Services, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This order concerns plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.

### I. FACTS

The plaintiff, Joyce O. Collins–Maat ("Collins–Maat"), is a 38–year–old woman with three children who possesses an associate's degree in journalism and a vocational background as a data processing teacher and computer programmer/analyst. She filed applications for disability insurance benefits and supplemental security income on June 11, 1985. She alleged therein that she was unable to work since December 15, 1981 as a result of thoracolumbar scoliosis and a respiratory ailment. After her claims were initially denied, she filed a request for a hearing before an Administrative Law Judge ("ALJ") which took place on December 2, 1986.

At the hearing, Collins–Maat testified that she is unable to work because of scoliosis of the spine. She noted that since 1981, she experiences muscle spasms from her back down to her lower extremities. She testified that she experiences pain from her shoulders down to her spine and lower extremities and that her hips are twisted secondary to the scoliosis. She further stated that she refused to undergo recommended back surgery and instead chose to treat her muscle spasms with herbs, vitamins and therapy which were recommended by her naturopath and chiropractor. A regiment of treatment prescribed by the chiropractor, which consists of hot and cold pack treatment, electric stimulation, reflexology and accupressure, helps her to control her pain. However, Collins–Maat noted she still experiences muscle spasms daily.

Collins–Maat stated she refused to accept traditional medical treatment, surgery or prescriptive drugs because of her religious beliefs and her brother's tragic experience with surgery. Her brother, who suffers from the same type of scoliosis of the spine, underwent recommended spinal surgery. Apparently, complications developed which ended in the loss of his leg.

In addition to scoliosis of the spine, Collins–Maat stated she also suffers from a respiratory problem, a heart murmur, frequent depression, crying spells, and suicidal ideation. She admitted to one suicide attempt in 1978, but stated she does not experience paranoia or any difficulties in getting along with others. She also stated she has never undergone treatment by a mental health professional, but recently had psychological counseling for her four-year-old son.

As to her physical condition and capabilities, Collins–Maat testified that in 1981 she was unable to bend, walk more than one to two blocks, or sit more than one or two hours. At the hearing, she stated she is presently able to sit one and a half to three hours, walk one and a half to two blocks, stand ten to twenty minutes, and lift fifteen pounds. However, Collins–Maat noted that occasionally she is unable to do any lifting or carrying because of severe pain. She also stated that her ability to bend, stoop and climb stairs is limited. Collins–Maat testified she did light housekeeping and cooking and spent most of her time at home reading, writing, painting and drawing. Also, she stated that in October of 1986 she had a baby.

Aside from Collins–Maat's testimony, a number of medical reports were offered at the hearing. A report prepared by Collins–Maat's treating chiropractor, Marc Sanders, D.C., indicated that Collins–Maat complained of pain in her right shoulder and back. Sanders observed a slight decrease in the range of motion of Collins–Maat's lumbar and thoracic spine with muscle spasms. However, Sanders found that his patient experienced no sensory or reflex abnormalities, no atrophy, and no abnormalities of gait or ambulation. Sanders

also stated that Collins–Maat "had full rotation and lateral flexion of lumbar and cervical spine."

On July 29, 1985, Ms. Collins–Maat was examined at the request of the Illinois Disability Determination Service by Dr. Ben Carasso. A report of this examination was also admitted during the administrative hearing. Dr. Carasso's report stated that Collins–Maat was well developed and possessed a healthy appearance. The physical examination of her thoracic spine showed a "moderate to severe dextroconvex scoliosis with increased lordosis." The doctor found the right iliac crest was one centimeter lower than the left one but that there was no pain with pressure over the thoracic or lumbar spine. He noted Collins–Maat could walk without a limp. Dr. Carasso found no evidence of pulmonary or cardiac problems secondary to the scoliosis. In his diagnosis, Dr. Carasso stated Collins–Maat had a history of recurrent pains occurring after prolonged sitting or prolonged standing or walking.

A third medical report submitted at the hearing was prepared by Dr. Richard L. Pearson who conducted an examination of Collins–Maat at the request of the Illinois Disability Service in March 1986. Dr. Pearson stated that Collins–Maat's back revealed a marked thoracolumbar scoliosis with a rib hump. Dr. Pearson noted "on standing there is an obvious pelvic tilt." However, he also noted "there is no pain with ROM [range of movement] other than her usual discomfort, and no palpable paraspinal spasm of the thoracolumbar region or . . . elicit tenderness." X-rays taken by Dr. Pearson revealed a marked scoliosis of the lumbar portion of the spine. Yet, no degenerative changes were identified. The doctor noted that Collins–Maat maintained a full range of motion of the hips and knees though experienced pain at the extremes of motion. He further observed that her reflexes appeared somewhat diminished in the lower extremities, but no evidence of sensory or motor abnormalities existed. Similarly, no significant atrophy of the lower extremities was reported. Finally, Dr. Pearson stated that Collins–Maat was fully weight bearing bilaterally and

walked without a limp or the use of any supportive devices.

On March 3, 1986, a residual functional capacity assessment was conducted by Dr. Jose L. Gonzalez. The assessment confirmed Collins–Maat's condition of S-shaped thoracolumbar scoliosis. However, Dr. Gonzalez concluded that in spite of this scoliosis, Collins–Maat is capable of frequently lifting twenty-five pounds, standing or walking for a total of six hours a day, and sitting for a total of six hours a day. Finally, Dr. Gonzalez noted that Collins–Maat possessed an unlimited ability to push and/or pull hand and foot controls and demonstrated no environmental restrictions.

After considering the entire record, the ALJ found that the medical evidence established that Collins–Maat suffered from scoliosis of the spine but that the physical impairment and pain associated therewith were not of sufficient severity to preclude her from performing light work activity. The ALJ determined that even though Collins–Maat was unable to perform her past work, she retained the residual functional capacity to perform a range of unskilled, light work.[1] Therefore, the ALJ found that Collins–Maat was not disabled and denied her request for disability benefits. On July 8, 1986, the Appeals Council adopted the ALJ's ruling as the final decision of the defendant Secretary of Health and Human Services ("Secretary").

## II. DISCUSSION

Collins–Maat instituted this civil action seeking a review of the Secretary's decision that she is capable of performing light work pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Her instant motion for summary judgment is based on three grounds. First, Collins–Maat asserts the Secretary's ruling that she is capable of light work is not supported by substantial evidence. Second, Collins–Maat argues that her use of nontraditional medical treatment preju-

diced the Secretary's decision. Third, Collins–Maat contends the Secretary should have sought testimony of a vocational expert to assess her ability to perform substantial gainful activity.

### A. *Substantial Evidence*

■ The function of this court is to determine whether the Secretary's finding of nondisability is supported by substantial evidence in the record. *Walker v. Bowen,* 834 F.2d 635, 639 (7th Cir.1987). The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a) (1987). To meet the foregoing definition, one must have a severe impairment which makes that person unable to engage in previous work or in any substantial gainful activity which exists in the national economy.

Collins–Maat bases her first argument in part on objective medical evidence which confirms her thoracolumbar scoliosis condition. The fact that Collins–Maat suffers from a diagnosed scoliosis is uncontested. Although Collins–Maat concedes that her scoliosis does not meet or equal the level of severity required by the listing of impairments in Appendix 1 of Subpart P, Regulation No. 4, Collins–Maat asserts that an assessment of her residual functional capacities reveals she is unable to perform light work. For a physical impairment to be disabling, the impairment must be of such a degree as to render the claimant unable to perform previous work or any type of activity, whether it be mental or physical, which the claimant can do for profit or pay. 20 C.F.R. § 401.1572(a), (b) (1987).

Contrary to Collins–Maat's assertions, medical evidence submitted at the hearing supports the Secretary's determination of nondisability. Medical reports filed at the

---

1. According to 20 C.F.R. § 404.1567(b) (1987), light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds and requires a good deal of walking or standing. When sitting is involved, it requires sitting with some pushing and pulling of arm or leg controls.

hearing indicate that Collins–Maat had no abnormalities of gait or ambulation, no significant restrictions in the range of motion of her spine, no leg length discrepancy, no pulmonary or cardiac problems secondary to her scoliosis, no signs of degenerative changes, no atrophy, and no sensory or reflex abnormalities. The report of Dr. Pearson noted that although Collins–Maat suffered from a marked thoracolumbar scoliosis in her lower back, he discovered no palpable paraspinal spasms of the thoracolumbar region, no tenderness in the region, and no evidence of sensory or motor abnormalities. The medical evaluation conducted by Dr. Carasso indicated that Collins–Maat walked without a limp, suffered no pain with pressure over the thoracic or lumbar spine, and exhibited no degenerative changes. Similarly, Collins–Maat's chiropractor, though noting her scoliosis, stated she walked normally, possessed no reflex abnormalities, and demonstrated no atrophy. A residual functional capacity report received from Dr. Gonzalez also notes the condition of S-shaped thoracolumbar scoliosis, but concludes that Collins–Maat is capable of frequently lifting twenty-five pounds, standing or walking a total of six hours a day, and sitting a total of six hours a day. Dr. Gonzalez reported that Collins–Maat possessed an unlimited ability to push and/or pull hand and foot controls and exhibited no environmental restrictions.

Although the medical evidence demonstrates Collins–Maat's condition of thoracolumbar scoliosis, it fails to establish a severe physical impairment which prohibits her from performing substantial gainful activity. None of the reports submitted by medical personnel indicates Collins–Maat is unable to work. Rather, a residual functional capacity assessment indicates Collins–Maat may be able to perform medium work.

Collins–Maat's assertions of disability rest on personal estimations of her limita-

tions.[2] However, Collins–Maat's complaints of disabling pain are undercut by the fact she had the capacity, drive, and determination to attend classes, read her assignments, study, sit for examinations, and earn a degree in journalism in 1984. Collins–Maat stated she often spends her days pursuing hobbies such as painting, ceramics, photography, drawing, reading, and writing poetry. All of these activities require that Collins–Maat either sit or stand for substantial periods. They also require the ability to concentrate for prolonged periods. Collins–Maat testified she has attempted to establish a career as a free-lance writer, although she has not yet made any money at it. In reaching the determination that Collins–Maat's pain was not disabling, the ALJ noted that she possessed none of the usual signs of prolonged severe pain:

> The claimant has no muscle atrophy or abnormal weight loss. There are no indications that her pain affects her ability to eat or concentrate. The claimant did not appear to be in severe pain when she testified at the hearing. There was no indications of interference with her ability to concentrate or respond as a result of pain.

Concluding that Collins–Maat's assessment of her physical limitations did not square with medical reports indicating her ability to stand and walk with normal gait and perform a wide range of movements with her back without significant limitation or pain, the ALJ determined Collins–Maat's complaints of pain did not render her unable to perform light work. As this court is not in a position to judge the credibility of the claimant's testimony and is precluded from reweighing the evidence presented below, the determination of the Secretary cannot be disturbed. The foregoing evidence affords a sufficient basis for the Secretary to conclude that Collins–Maat was capable of performing light work dur-

**2.** Even though the noted personal estimations of Collins–Maat limitations only concerned physical impairments, the Secretary took into consideration the possibility that Collins–Maat might be suffering from a disabling mental impairment resulting from her severe depression. On this basis, the Secretary apparently determined Collins–Maat might be unable to return to her prior employment. The issue of mental disability, however, is not pressed by Collins–Maat in this appeal.

ing the period for which benefits are sought.

Although Collins–Maat asserts that since the Secretary's denial, her condition has substantially worsened, nothing prevents her from submitting a new claim for benefits based on her present condition. The only issue with which this court is presented is whether the Secretary's decision was supported by substantial evidence at the time it issued. As this court finds that the Secretary could reasonably conclude from the evidence that Collins–Maat was not disabled at the time of her application, Collins–Maat's first argument fails.

### B. *Use of Alternative Health Care*

 In her second argument for summary judgment, Collins–Maat asserts that her use of "Alternative Health Care" to treat her medical condition prejudiced the Secretary's decision concerning her disability. She contends that this prejudice is especially evidenced by a statement made by the ALJ (and adopted by the Secretary) which declared that her pain was not severe because she did not take morphine or a strong codeine-based analgesic. Collins–Maat believes that this statement indicates the ALJ (and thus the Secretary) relied on inappropriate considerations in denying her claims and mandates a reversal of the Secretary's decision.

Relevant Social Security Administration regulations provide that in order for a person to secure benefits, that person must follow treatment prescribed by the claimant's physician if this treatment can restore the claimant's ability to work. 20 C.F.R. § 404.1530(c)(1) (1987). If a claimant refuses such curative treatment, benefits will normally be denied. However, exceptions to this rule exist. One exception of relevance to the present case allows a claimant to refuse prescribed medical treatment "if the specific medical treatment is contrary to the established teaching and tenets of the claimant's religion." *Id.* Thus, the regulation prohibits benefits from being denied because a claimant, for sincere religious reasons, refuses corrective medical treatment.

In the present case, sufficient evidence was presented to establish that Collins–Maat's refusal to pursue prescribed medical treatment was based on a central tenet of her religious beliefs. Collins–Maat's religious beliefs preclude her from taking drugs or having surgery. Rather, they limit her to treating her condition by spiritual healing and the use of herbs, vitamins, and various forms of therapy recommended by her naturopath and chiropractor.

Little doubt exists that the ALJ's statement regarding Collins–Maat's refusal to use traditional pain relievers was improper. Section 404.1530(c)(1) clearly prohibits consideration of such factors in determining eligibility for disability benefits. Concluding that the ALJ's comment was inappropriate, however, does not dictate reversal of the Secretary's decision. In the present case, sufficient medical evidence exists to support the determination that Collins–Maat is capable of performing light work. This court cannot select "one statement [of the ALJ] to override the totality of evidence." *Walker v. Bowen,* 834 F.2d 635, 643 (7th Cir.1987). Although the ALJ erred in commenting on Collins–Maat's failure to take prescription pain relievers, only harmless error resulted. Because the ALJ and Secretary's ultimate determination of nondisability is supported by substantial evidence, it cannot be disturbed. *Veal v. Bowen,* 833 F.2d 693, 696 (7th Cir.1987); *quoting Orlando v. Heckler,* 776 F.2d 209, 212 (7th Cir.1985).

### C. *Vocational Expert*

 Finally, Collins–Maat asserts the Secretary erred in not employing the use of a vocational expert in assessing what limitations, if any, her nonexertional impairments had on her ability to perform substantial range of light work. The use of vocational factors or experts are not statutory requirements under the Social Security Administration Act. They *may* be considered when one is applying for a period of disability. 20 C.F.R. § 404.1566(c)(5) (1987) (emphasis added). The critical inquiry is whether reliable evidence exists which persuades a reasonable person that the claimant's asserted limitations signifi-

cantly diminish employment opportunities otherwise available. *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir.1986). So long as sufficient evidence exists to make such a determination, the use of a vocational expert is left up to the discretion of the ALJ. *Id.*

 In deciding that Collins–Maat was not disabled, the Secretary considered Collins–Maat's assertion of pain but determined that her pain was not of sufficient severity to preclude her from performing a wide range of light work. Medical reports indicated that Collins–Maat was without significant environmental limitations and was able to walk and stand normally. Citing Dr. Gonzalez' assessment of Collins–Maat's residual functional capacity, the Secretary found that Collins–Maat possessed the physical abilities to perform light work. Considering Collins–Maat's young age, advanced education, and prior vocational experience, the Secretary determined that Collins–Maat's asserted nonexertional impairments did not significantly limit the number of light work jobs she was capable of performing. As such, the Secretary concluded Collins–Maat was able to perform a wide range of substantial gainful activity and denied her claim for disability benefits. Since substantial evidence exists to declare Collins–Maat able to perform substantial gainful activity, vocational expert testimony was not necessary. As such, the Secretary did not err by not consulting a vocational expert prior to determining Collins–Maat's disability.

### III. CONCLUSION

For the foregoing reasons, this court hereby denies plaintiff's motion for summary judgment and grants defendant's cross-motion for summary judgment.

IT IS SO ORDERED.