76 F.3d 378
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jesse DONEWORTH, Plaintiff-Appellant,
v.
Donna SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-4290.
 United States Court of Appeals, Sixth Circuit.
 Jan. 23, 1996.
 
 Before: MERRITT, Chief Judge; and GUY and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant, Jesse Doneworth, appeals from the denial of social security disability benefits.[1] Doneworth contends that the administrative law judge (ALJ) failed to properly apply S.S.R. 85-15 (Cum.Ed.1985), 1985 WL 56857 (S.S.A.) (hereinafter SSR 85-15). He also argues that "where an ALJ concludes that a claimant will 'often' fail to complete work tasks in a timely manner, that individual is disabled."
 
 
 2
 Upon review, we conclude that SSR 85-15 is not applicable to Doneworth's claim. We further conclude that substantial evidence supports the ALJ's determination that Doneworth could still perform a limited range of sedentary work.
 
 I.
 
 3
 Claimant was born in 1948 and worked until 1986 primarily as a forklift or baler operator. In 1986, his employer went out of business, and Doneworth had only minimal brief employment after that date. Prior to his employment being terminated, Doneworth had his left leg amputated below the knee in 1984 as a result of an automobile accident. Since then he has worn a prothesis, which he tolerates well.
 
 
 4
 In 1991, claimant began to have problems with his right leg and in October 1992 developed severe cellulitis of the right leg. It is as a result of this development, which occurred after the expiration of claimant's insured status, that the ALJ determined that Doneworth became disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.10C(4) (1995).[2]
 
 
 5
 Doneworth has undergone three mental evaluations, only one of which occurred (1988) prior to the expiration of his insured status. The report that issued following the 1988 psychological evaluation indicated high borderline intelligence and math and reading skills at the upper elementary school level. At the time of this exam, Doneworth conceded he probably could perform work of a sedentary nature.
 
 
 6
 The first of claimant's two mental evaluations following expiration of his insured status was performed by Dr. Stephen Vance on May 20, 1992. Dr. Vance concluded that Doneworth had borderline intellectual functioning and suffered from depression exacerbated by alcohol abuse.[3] The report prepared by Dr. Vance indicated by way of general comments:
 
 
 7
 Mr. Doneworth did not appear to have difficulty understanding or following simple instruction; within the confines of his physical limitations he probably is capable of routine repetitive activities and some varied tasks. His attention span was in the low normal range. His contact with the examiner was fairly pleasant. It does appear that Mr. Doneworth has had long standing problems handling stress or pressure. He tends to feel anxious under stressful situations.
 
 
 8
 (App. 419.)
 
 
 9
 Dr. Vance also filled out the form that assessed the ability of Doneworth to do work-related activities. The form rates a number of work skills over a range that encompasses very good, good, fair, and poor or none. None of the work skills evaluated fell into either the "very good" or "poor" classification. Skills rated "good" and "fair" were as listed below.
 
 1. MAKING OCCUPATIONAL ADJUSTMENTS
 
 10
 Check the blocks representing the individual's ability to adjust to a job and complete item # 9.
 
 
 11
 UNLIMITED/ POOROR
 VERY GOOD GOOD FAIR NONE
 1. Follow Work Rules. x
 2. Relate to co-workers. x
 3. Deal with the public. x
 4. Use judgment. x
 5. Interact with Supervisor(s) x
 6. Deal with work stresses. x
 7. Function independently. x
 8. Maintain attention/concentration. x
 
 
 12
 9. Describe any limitations and include the medical/clinical findings that support this assessment.
 
 
 13
 (App. 420.)
 
 
 14
 There was nothing in Dr. Vance's report to indicate that sedentary work would be either medically inadvisable or otherwise contraindicated.
 
 
 15
 On July 7, 1992, claimant underwent another psychological assessment performed by Bill S. Fuess, Ph.D., a clinical psychologist, at the request of claimant's attorney. Dr. Fuess concluded that alcohol abuse was a major contributor to Doneworth's problems and recommended an alcohol rehabilitation program as treatment. The mental impairments questionnaire, which Dr. Fuess completed, indicated mixed and sometimes arguably contradictory findings as to claimant's interpersonal and workplace abilities and deficiencies. For example, Dr. Fuess found no substantial limitation in the following areas:
 
 
 16
 8. List those functional capacities which are substantially limited due to the listed impairments. Ability to:
 
 
 17
 A. understand, remember and carry out very short and simple instructions on a sustained basis: [ ]
 
 
 18
 ....
 
 
 19
 F. sustain an ordinary routine without special supervision: [ ]
 
 
 20
 G. work in coordination with or proximity to others without distracting or being distracted by them: [ ]
 
 
 21
 I. make simple work-related decisions: [ ]
 
 
 22
 ....
 
 
 23
 K. ask simple questions or request assistance: [ ]
 
 
 24
 L. be aware of normal hazards and take appropriate precautions: [ ]
 
 
 25
 ....
 
 
 26
 N. adhere to basic standards of neatness and cleanliness: [ ]
 
 P. others:
 
 27
 9. Does the patient exhibit substantial restriction of daily activities, such as independently and effectively cleaning, shopping, cooking, using public transportation, paying bills, maintaining a residence, caring for grooming and hygiene, and so forth?
 
 
 28
 yes [ ] no [x] Comments:
 
 
 29
 ....
 
 
 30
 12. Would the patient be able to deal with, on a sustained basis, the stress of getting to work regularly, having his performance supervised and remaining in the work place for a full day?
 
 
 31
 yes [x] no [ ] Comments:
 
 
 32
 (App. 433-35.)
 
 
 33
 On the other hand, Dr. Fuess opined that Doneworth's capabilities would be substantially limited in the following areas:
 
 
 34
 8. List those functional capacities which are substantially limited due to the listed impairments. Ability to:
 
 
 35
 ....
 
 
 36
 B. respond appropriately to supervision, co-workers and usual work situations: [x]
 
 
 37
 C. maintain attention and concentration for extended periods of 2-hour segments: [x]
 
 
 38
 D. perform activities within a schedule: [x]
 
 
 39
 E. maintain regular attendance and be punctual with customary tolerance: [x]
 
 
 40
 ....
 
 
 41
 J. complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent work pace without an unreasonable number and length of rest periods: [x]
 
 
 42
 ....
 
 
 43
 M. respond appropriately to changes in the work setting: [x]
 
 
 44
 ....
 
 
 45
 O. interact appropriately with the general public: [x]
 
 
 46
 ....
 
 
 47
 10. Does the patient exhibit substantial difficulties in maintaining social functioning, including the ability to get along with family, friends, neighbors, etc. (Impaired social functioning may be demonstrated by a history of social isolation, altercations, evictions, firings, fear of strangers, or inappropriate response to persons in authority or cooperative behavior involving co-workers.)
 
 
 48
 yes [x] no [ ] Comments:
 
 
 49
 11. Would you expect the patient to exhibit frequent deficiencies of concentration, persistence or pace, resulting in a failure to complete tasks in a timely manner in work or work-like settings?
 
 
 50
 yes [x] no [ ] Comments:
 
 
 51
 (App. 433-35.)
 
 
 52
 As with Dr. Vance, no overall opinion is offered as to claimant's ability to perform sedentary work.
 
 
 53
 The ALJ also consulted a vocational expert (VE). A hypothetical was posed, which asked the VE to assume that Doneworth could sit without restrictions, occasionally lift 15 pounds, frequently lift ten pounds, stand for 15 to 20 minutes at a time and for a total of two to three hours during the day, perform no postural activities, and avoid working at heights and around moving machinery. The VE responded that there were a total of 1800 unskilled, sedentary jobs Doneworth could perform; namely, 1500 assembly jobs and 300 inspection jobs. The ALJ then asked a second hypothetical directed at Doneworth's mental impairments. The VE was to further assume that Doneworth was limited as Dr. Vance had described. The VE indicated that there was nothing in Dr. Vance's report that would prohibit Doneworth from doing the jobs earlier identified.
 
 
 54
 Since there is no challenge to the findings of the ALJ as they relate to claimant's exertional abilities, we address only the findings of the ALJ as they relate to Doneworth's mental condition. In this regard, the ALJ concluded:
 
 
 55
 Assessing the claimant's mental condition according to the psychiatric review technique. Sections 404.1520a and 416.920a of the Regulations, the undersigned finds it is a severe impairment, but is not severe enough to meet the Listing of Impairments. He has an affective disorder, borderline intellectual functioning and, possibly, an underlying personality disorder. He has a history of alcohol abuse but in recent years that problem has been under control and does not amount to a substance addiction disorder. His activities of daily living are only mildly affected from a mental standpoint. He has moderate difficulty with social functioning, mainly in a work setting, as he appears to get along with family members all right. His concentration is considered seriously limited, which could be expected to often result in failure to complete tasks timely. The claimant's response to his physical difficulties amounts to an episode of mental deterioration in response to stress.
 
 
 56
 ....
 
 
 57
 From the standpoint of his mental condition, the claimant would appear to be limited to the extent indicated by Dr. Vance. That is, he has seriously limited but not precluded ability to relate to coworkers, deal with the public, use judgment, deal with work stresses, maintain attention/concentration to job tasks, demonstrate reliability and understand, remember and carry out complex job instructions. Otherwise, his ability to work from a mental standpoint remains reasonably good.
 
 
 58
 (App. 15-16.) The ALJ's ultimate conclusion was:
 
 
 59
 Considering the claimant's age, education, work experience and residual functional capacity, using Rule 201.24 of the Medical-Vocational Guidelines as a framework for decision making, and as indicated by vocational expert testimony at the hearing, a significant number of other jobs existed in the economy which the claimant could perform. Specifically, he remained capable of some 1,800 jobs for assemblers and production inspectors that exist in the region where he resides.
 
 
 60
 (App. 19.)
 
 II.
 
 61
 Claimant's primary objection to the ALJ's findings stems from the contention that the ALJ failed to apply SSR 85-15. This regulation was a clarification of an earlier policy statement, S.S.R. 85-7 (Cum.Ed.1985), which superseded S.S.R. 83-13 (Cum.Ed.1983). As SSR 85-15 states:
 
 
 62
 The original purpose of SSR 83-13 was to clarify how the regulations and the exertionally based numbered decisional rules in Appendix 2, Subpart P, Regulations No. 4, provide a framework for decisions concerning persons who have only a nonexertional limitation(s) of function....
 
 
 63
 1985 WL 56857 at * 1 (emphasis added).
 
 
 64
 A mental impairment is one type of nonexertional limitation and SSR 85-15 makes clear that a mental impairment alone, even if not meeting the Listing of Impairment may dictate a finding that a claimant is unable to perform substantial work. The Secretary argues, however, that SSR 85-15 does not apply to claimant since he has both exertional and nonexertional limitations and SSR 85-15 applies to cases where only a nonexertional limitation is present. We agree with the Secretary and our decision is informed in no small way by a very recent decision by the Ninth Circuit. In Roberts v. Shalala, Secretary of Health & Human Servs., 66 F.3d 179, 183 (9th Cir.), modified on other grounds, No. 93-35806, 1995 WL 617591, at * 3 (9th Cir. Oct. 23, 1995), petition for cert. filed, --- U.S.L.W. ---- (U.S. Nov. 28, 1995) (No. 95-6897), the court addressed this precise issue and concluded:
 
 
 65
 SSR 85-15 has no application to Roberts because she claims both exertional and nonexertional impairments, whereas SSR 85-15 provides guidance only for cases in which the claimant asserts "solely nonexertional impairments." SSR 85-15 at 543.
 
 
 66
 Since the interpretation placed on this section by the Ninth Circuit is a reasonable one, we see nothing to be served by reaching a contrary result. Also, some deference is due the Secretary in her interpretation of the department's policy statements.
 
 
 67
 Although we side with the Secretary as to the applicable scope of SSR 85-15, this does not decide the issue before us. Claimant argues that logic dictates that if he were to be found disabled as a result of his nonexertional limitations, certainly that result would not change, because he also has severe exertional limitations. We have no quarrel with this proposition. However, SSR 85-15, even if it were applicable would not dictate the result in any case. It merely helps to provide a framework for the evaluation of nonexertional limitations. We are persuaded that substantial evidence supports the ALJ's finding that despite his mental impairments, claimant can still perform sedentary work.
 
 
 68
 Finally, Doneworth argues that the ALJ, in effect, contradicted his own conclusion when he states in his opinion denying benefits that: "His [Doneworth's] concentration is considered seriously limited, which could be expected to often result in failure to complete tasks timely." (App. 16.) This reference is taken from one of Dr. Fuess's responses in the mental impairments questionnaire. As we pointed out earlier, some of Dr. Fuess's responses were themselves contradictory. Furthermore, it is clear that the ALJ afforded more weight to the evaluations made by Dr. Vance, who found the claimant's nonexertional limitations to be somewhat less severe than did Dr. Fuess.[4] We do not think the isolated reference to an inability to always finish tasks on time would detract sufficiently from the other substantial evidence supporting a finding of not disabled to compel a reversal of the Secretary's decision. As we have stated in numerous prior opinions, the fact that there is substantial evidence in the record to support a finding of disabled, would not justify our ignoring the substantial evidence that supports the contrary result reached by the Secretary.
 
 
 69
 AFFIRMED.
 
 
 
 [1]
 Doneworth also filed a claim for SSI disability benefits. The ALJ found Doneworth entitled to SSI benefits based on a disability beginning October 26, 1992, a date 10 months beyond the expiration of claimant's insured status
 
 
 [2]
 Claimant also had cataract surgery on the right eye in 1987, and in 1990 was diagnosed with non-insulin dependent diabetes mellitus. He is also obese, hypertensive, and a heavy smoker
 
 
 [3]
 During this examination Doneworth did not admit to any mental problems and saw no need for further treatment beyond the continuation of the medicine he was taking for his other health problems
 
 
 [4]
 The ALJ's second hypothetical to the VE asked him to assume Doneworth was limited in the manner described by Dr. Vance. Also in his opinion, the ALJ stated: "From the standpoint of his mental condition, the claimant would appear to be limited to the extent indicated by Dr. Vance." (App. 16.)