**Isaiah WILLIAMS, Plaintiff,**

v.

**William A HALTER, Acting Commissioner of the Social Security Administration, Defendant.**

**No. 6:00–CV–176–Orl–22JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

March 16, 2001.

John C. Gautier, Juan C. Gautier, Orlando, FL, for Isaiah Williams.

Susan Roark Waldron, U.S. Attorney's Office, Tampa, FL, for Kenneth Apfel.

## ORDER

CONWAY, District Judge.

This cause comes before the Court for consideration without oral argument of Magistrate Judge James G. Glazebrook's February 23, 2001 Report and Recommendation (Doc. 22) and the Commissioner's Objection (Doc. 23) thereto.

■ The Administrative Law Judge ("ALJ") found that because Plaintiff suffered from seizures, he could not work around heights and dangerous machinery. Nevertheless, the ALJ utilized the "grids" to conclude that Plaintiff was not disabled. In his Report and Recommendation, Judge Glazebrook determined that due to Plaintiff's non-exertional limitations resulting from the seizure disorder, the ALJ erred in exclusively using the "grids," and in failing to utilize a vocational expert, to determine that Plaintiff was not disabled.

This Court concurs in Judge Glazebrook's analysis. The ALJ erred in relying on Social Security Ruling 85–15. As noted in the Report and Recommendation, SSR 85–15 does not apply when a claimant has both exertional and non-exertional impairments. *See Roberts v. Shalala,* 66 F.3d 179, 183 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996). The Commissioner's more recent reliance on SSR 96–9 is likewise misplaced.[1] That SSR states that "few occupations in the unskilled sedentary occupational base require work in environments ... [involving] unusual hazards," such as "moving mechanical parts

of equipment, tools, or machinery," and opines that "[e]ven a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base." However, like SSR 85–15, SSR 96–9 overlooks the fact that the Secretary's own regulation states that approximately 85 percent of the unskilled sedentary jobs existing in the national economy are in the machine trades and benchwork occupational categories. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(a); *see also Asher v. Bowen,* 837 F.2d 825, 828 (8th Cir.1988) (noting 85% figure in § 201.00(a)); *Warmoth v. Bowen,* 798 F.2d 1109, 1112 (7th Cir.1986) (same). Since Plaintiff's non-exertional impairment prevented him from doing unlimited types of sedentary work, the ALJ erred in not obtaining expert vocational evidence. *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992) (light work); *Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir.1990) (sedentary work).

Based on the foregoing, it is ORDERED as follows:

1. Pursuant to Fed.R.Civ.P. 25(d)(1), William A. Halter, Acting Commissioner of the Social Security Administration, is substituted in place of Commissioner Kenneth S. Apfel as the Defendant.

2. Magistrate Judge James G. Glazebrook's February 23, 2001 Report and Recommendation (Doc. 22) is APPROVED AND ADOPTED.

3. The Commissioner's Objection (Doc. 23) to the Report and Recommendation is OVERRULED.

4. This case is REVERSED AND REMANDED for further proceedings consistent with this Order and Judge Glaze-

---

1. The Commissioner's Objection states that a copy of SSR 96–9 is attached to the Objection. However, the document attached to the Objection is SSR 96–6, not SSR 96–9.

brook's February 23, 2001 Report and Recommendation.

5. The Clerk shall enter judgment accordingly, and shall close this case.

### Report and Recommendation

GLAZEBROOK, United States Magistrate Judge.

Plaintiff Isaiah Williams appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for a period of disability and disability insurance benefits. *See* Docket No. 1. For the reasons set forth below, the Commissioner's decision should be **REVERSED** and **REMANDED**.

### I. PROCEDURAL HISTORY

On February 24, 1994, Williams protectively filed his claim for disability benefits, claiming disability as of March 1, 1993. R. 102. Williams claimed that he was disabled because he suffered from seizures, a broken leg, headaches, backache, and a broken hand. R. 102. A hearing was set for September 22, 1995, but Williams did not appear. R. 42–46, 159. A second hearing was scheduled for December 31, 1995. R. 35–38. Williams did not appear at which time a Notice to Show Cause for Failure to Appear was sent to William. R. 161. Williams did not respond to the Notice to Show Cause the case was dismissed on January 31, 1996. R. 161–69. Williams requested review of the dismissal order to the Appeals Council. The Appeals Council vacated the ALJ's order and remanded the case for further proceedings. R. 167–171. On December 4, 1997, Williams appeared and testified at a hearing before the Honorable Henry U. Snivey, Administrative Law Judge ["ALJ"], in Orlando, Florida. R. 50–82. Williams was not represented by counsel at the hearing. The ALJ heard testimony by Williams, but did not utilize a Vocational Expert.

On May 24, 1998, the ALJ issued his decision that Williams was not entitled to disability and disability insurance benefits. R. 19–28. Following his review of the medical and other record evidence, the ALJ found that because of his seizures, Williams needed to avoid work around heights or dangerous machinery. R. 27, Finding 5. The ALJ further found that because of Williams's back and right-knee pain and Williams's limited right-knee motion, Williams could not lift over 10 pounds. R. 27, Finding 5. The ALJ concluded that Williams could not perform his past relevant work as a restaurant manager, welder, mechanic, and dishwasher. R. 27, Finding 6. However, the ALJ found that Williams retained the residual functional capacity to perform the full range of the physical exertional requirements of sedentary work. R. 27, Finding 7. The ALJ applied the Medical–Vocational Guidelines (the "grids"), and concluded that Williams was not disabled. R. 28, Finding 11. The ALJ also found that Williams had not engaged in substantial gainful activity from March 1, 1993 through December 31, 1995, but that Williams had been engaging in substantial gainful activity since January 1, 1996.

On December 6, 1999, after considering additional medical evidence (the medical records of Orange County Medical Clinic and Lewis K. Curtwright, D.O.) submitted by Williams, the Appeals Council denied review. R. 3–4. On February 9, 2000, Williams timely appealed the Appeals Council's decision to deny review to the United States District Court. Docket No. 1. On August 24, 2000, Williams filed a memorandum of law in support of his appeal of the denial of review. Docket No. 15. On October 4, 2000, the Commissioner filed a memorandum in support of his deci-

sion that Williams was not disabled. Docket No. 17. This Court heard oral argument of the appeal on January 25, 2001. Docket No. 21. The appeal is ripe for determination.

## II. *THE PARTIES' POSITIONS*

Williams primarily contends that the Commissioner erred in not obtaining vocational expert testimony in light of Williams's significant non-exertional limitations—*i.e.,* inability to work at high elevations and dangerous machinery. The Commissioner argues that substantial evidence supports his decision to deny disability. Relying on *Titles II and XVI: Capability To Do Other Work—The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* (1985), Social Security Ruling 85–15 [hereinafter SSR 85–15], the Commissioner claims that Williams retained the ability to perform at least sedentary work.

## III. *THE STANDARD OF REVIEW*

### A. *Affirmance*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995), *citing Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982) and *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *accord, Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991).

■ Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991); *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir.1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord, Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir.1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B. *Reversal and Remand*

■ Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g) (Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services,* 21 F.3d 1064, 1066 (11th Cir.1994); *accord Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir.1991); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. *Bowen v. Heckler,* 748 F.2d 629, 631, 636–37 (11th Cir.1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or

under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089–92, 1095, 1098 (11th Cir.1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090–91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829–30 (11th Cir.1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir.1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment

immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material—relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090–92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir.1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir.1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir.1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

---

1. The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n. 4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.*

## C. Standard of Review for Evidence Evaluated by Appeals Council

After the ALJ's decision—but before the Appeals Council decision—Williams submitted additional medical records showing three visits in 1998 and two in 1999, as well as disability statements from Dr. Lewis Curtwright, D.O.R. 5–9, 10, 15. The Appeals Council properly made them a part of the record, and also considered them in denying review. R. 3–4. The district court also must consider the new evidence in determining whether the Commissioner erred in denying review of the ALJ's decision.

■ Congress left the term "final decision" undefined in 42 U.S.C. § 405(g). Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review, the Appeals Council's order denying review is a "final decision" of the Commissioner under § 405(g). *Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000); *accord Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). The Appeals Council "will" review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20 C.F.R. § 416.1470; *Sims,* 120 S.Ct. at 2086; *see also, Parker v. Bowen,* 788 F.2d 1512, 1518 (11th Cir.1986) (en banc). The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Sims,* 120 S.Ct. at 2086.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's review is similarly broad. *Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000). The Appeals Council, not the claimant, has the primary responsibility for identifying and developing the issues. *Sims,* 120 S.Ct. at 2086. When the Appeals Council refuses to consider new evidence submitted to it and denies review, the Appeals Council's decision denying review is subject to judicial review. 20 C.F.R. §§ 404.970(b); 416.1470(b); *Sims,* 120 S.Ct. at 2086; *Keeton v. Department of Health and Human Services,* 21 F.3d 1064, 1066 (11th Cir.1994). Furthermore, the Appeals Council commits reversible error when it refuses to consider new evidence and then denies review. *Keeton,* 21 F.3d at 1066. Similarly, it is *reversible error* for a district court to consider only the evidence presented to the ALJ—and to ignore the new evidence presented to the Appeals Council—in reviewing a decision of the Appeals Council. *Keeton,* 21 F.3d at 1066.

The Appeals Council must consider and evaluate new evidence to determine whether there is a basis for changing the ALJ's decision. *Sims,* 120 S.Ct. at 2086; *Falge v. Apfel,* 150 F.3d 1320, 1322 n. 4 (11th Cir.1998). When the Appeals Council has denied review, the district court looks only to the evidence actually presented to the ALJ in determining whether the *ALJ's decision* is supported by substantial evidence. *Falge,* 150 F.3d at 1323; *accord, Eads v. Secretary of Health and Human Services,* 983 F.2d 815, 817 (7th Cir.1993) (ALJ cannot be faulted for failure to weigh evidence never presented to him). Nevertheless, there is an important difference between *Falge* and this case—a difference stressed by the United States Court of Appeals for the Eleventh Circuit. In *Falge,* the claimant did not appeal the Appeals Council's decision to deny review. Instead he appealed only the *ALJ's decision* to deny benefits. 150 F.3d at 1324. In this case, however, the claimant does expressly appeal and seek a reversal of the

Appeals Council's decision to deny review. Docket No. 1 at ¶ 1–2. The Eleventh Circuit directs the district courts to consider evidence submitted to the Appeals Council in reviewing the Appeals Council's denial of review. *Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066.

Indeed, it makes sense that Congress has provided for judicial review of the Commissioner's final decision—the last step of review necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error. *Sims*, 120 S.Ct. at 2086; *Keeton*, 21 F.3d at 1066. Similarly, when the Appeals Council denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error. *See Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066, 1068; 20 C.F.R. § 404.970(b) (Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record). The Commissioner cannot avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

In this case, the claimant has appealed an unfavorable decision to the Appeals Council as a necessary step in exhausting administrative remedies. The Appeals Council has considered claimant's additional evidence in light of the issues raised in the request for review, has considered the applicable statutes and regulations, has considered the ALJ's decision, and has issued a written final decision determining that the ALJ neither erred nor abused his discretion, and determining that the ALJ's findings are supported by substantial evidence. The Appeals Council's determination is subject to judicial review. The Commissioner cannot avoid judicial review of the Appeals Council's final decision by passing a regulation defining the term "final decision of the Commissioner of Social Security" in 42 U.S.C. § 405(g) as the decision of the ALJ, and by calling the Appeals Council's final decision a "denial of review." *See Sims*, 120 S.Ct. at 2086; *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983) (Appeals Council's denial of review was a judicially reviewable final decision under 42 U.S.C. § 405(g)).

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

### A. Treating Physicians

■ Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*

*v. Callahan*, 125 F.3d 1436, 1439–1441 (11th Cir.1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *Sabo v. Commissioner of Social Security*, 955 F.Supp. 1456, 1462 (M.D.Fla.1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir.1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d

513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527(e).

**B.** *Developing the Record*

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir.1988); *Cowart v. Schweiker*, 662 F.2d 731, 735–36 (11th Cir.1981). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right. *See* 42 U.S.C. § 406; *Cowart*, 662 F.2d at 734. The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. *See Cowart*, 662 F.2d at 735–36. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir.1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir.1982). This special duty requires the ALJ to "scrupulously and conscien-

tiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

### C. *Medical Tests and Examinations*

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir.1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir.1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984) (failure to order such an evaluation may be reversible error). Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. § 416.917 (1998).

### D. *The Five Step Evaluation*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R.

§ 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

■ In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See id.*, 985 F.2d at 534.

■ The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir.1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir.1978).

### E. *Other Work*

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the Medical–Vocational Guidelines [the "grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002–03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir.1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir.1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir.1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

In *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir.1992), the Eleventh Circuit held that vocational testimony is required to determine whether a claimant's non-exertional limitation, which included environmental restrictions, limited the number of jobs the claimant could perform. The *Marbury* plaintiff presented evidence that he suffered from a seizure disorder. Relying solely on the grids, the ALJ found that Marbury's "residual functional capacity for a full range of *light work* was reduced by his inability to work around unprotected heights or dangerous moving machinery, but that these impairments did not reduce the range of light work available to him." 957 F.2d at 838 (emphasis added). The Eleventh. Circuit reversed the ALJ's decision, stating:

> Under the ALJ's findings it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights or dangerous moving machinery. Expert testimony was therefore required to determine whether Marbury's limitations were severe enough to preclude him from performing a wide range of light work. An ALJ's conclu-

sion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert. It was therefore error to rely upon the grids. 957 F.2d at 839 (emphasis included) (citations omitted).

### 1. Pain

■ Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559, 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by ob-

jective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

■ Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561–62; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir.1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir.1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561–62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

## V. APPLICATION AND ANALYSIS

The ALJ found that Williams suffers from the following severe impairments—seizure disorder, migraine headaches, back, leg, and right knee pain. The ALJ erred in relying solely on the grids and in failing to elicit vocational expert testimony. Substantial evidence does not support the ALJ's findings that Williams retains the residual functional capacity to perform the full range of sedentary work.

### A. The Facts

At the time of the hearing, Williams was a forty-five year old individual with an Associate Degree in Business Administration. R. 59, 85. His past relevant work was as a mechanic, welder, dishwasher and restaurant manager.

Williams alleges that he became disabled on March 1, 1993, due to seizures, a broken leg, headaches, backache, and a broken hand. R. 102. For almost a year after his alleged onset date, Williams was incarcerated for a felony. R. 107. Although Williams stated at his December 1997 hearing before the ALJ that he had worked only two months since March 1993 [R. 68, 71–72], his earnings record showed income of $7,482.75 in 1996 and $6,207.54 in 1997. R. 203–204.

Medical records primarily concerned Williams's March 1995 motorcycle accident. R. 139–44, 145–47, 181–201. After being involved in an accident while riding his motorcycle, Williams was admitted to Brookwood Community Hospital on March 10, 1985 with the following conditions: compound fracture right tibia, stellate laceration of the occipital region of the scalp, longitudinal fracture of the left first metacarpal and a concussion. R. 139–44. CT Scan of the head revealed very small extracerebral blood collection in periphery of the left posterior frontal region. R. 142. On March 14, 1985, Williams underwent debridement, irrigation and secondary closure of the wounds to the right knee and upper tibia. R. 144.

On March 19, 1985, Williams presented to Emmanuel D. Scarlatos, M.D., for follow up to his surgery. Dr. Scarlatos noted that the deformity to the thumb was greater than originally recognized. Williams was supplied with Phenaphen #3 and instructed to return in ten days. R. 146–47. Williams returned to Dr. Scarlatos on April 4, 1985 complaining of discomfort in the right wrist. X-rays revealed a nondisplaced fracture of the base of the third metacarpal. X-rays of the left thumb showed a slight angulation of the first metacarpal but healing in the area was occurring well.

On June 25, 1985, Williams complained to Dr. Scarlatos about some dysesthesias over the dorsum of both hands. R. 145. On December 3, 1985, Williams returned to Dr. Scarlatos who noted that Williams was walking with a slight limp, which may have been due mostly to stiffness. X-rays showed good consolidation of the fracture. Dr. Scarlatos recommended Epsom Salts soaks and mobilizing exercises to the ankle. He was to return on an "as needed" basis. R. 145. Williams submitted no medical records for the years 1986 through 1996.

On April 13, 1994, Williams presented to Nitin Hate, M.D., for a consultative examination. R. 148–52. Williams complained of the following symptoms: history of seizure disorder, brain damage, migraine-like headaches, knee pain and swelling, loss of memory, and reduced motion in left thumb. Dr. Hate's examination revealed that Williams could not perform toe and heel walking or squatting. The range of motion in the right knee was slightly reduced. R. 149. Dr. Hate stated that Williams "needs physical therapy and

should be able to do light physical or sedentary work." R. 150.

On November 20, 1997, Williams presented to the Orange County Medical Clinic for treatment of his seizure disorder. He was prescribed Dilantin. R. 176. He returned to the clinic on December 16, 1997 and was diagnosed with a seizure disorder. He was instructed to follow up with the Epilepsy Foundation. R. 176–78. On February 20, 1998, Williams saw Dr. Lewis Curtwright, D.O. Williams stated that he has seizures 2–3 times a day. Dr. Curtwright diagnosed Williams with seizure disorder and anxiety/depression. R. 180. On April 16, 1998, Dr. Curtwright stated that due to Williams's neurological problems, "he does not appear fit for work." R. 179.

Williams returned to the Orange County Medical Clinic on April 28, 1998 for his seizure disorder. R. 5. On August 4, 1998, Williams returned to the clinic with complaints of 1 – 2 seizures per day. The diagnosis was seizure disorder, post traumatic motor vehicle accident. R. 6. He returned to the clinic on November 13, 1998 and July 27, 1999. R. 7–8. On September 16, 1998, Curtwright opined that Williams "is disabled from a seizure disorder and no improvement is expected." R. 15. On August 24, 1999, Dr. Curtwright stated that Williams "is unable to participate in gainful employment because of unstable convulsive seizure." R. 10.

### B. *The Analysis*

Williams's earnings record showed income of $7,482.75 in 1996 and $6,207.54 in 1997. Inasmuch as "substantial gainful activity" is defined as $500 per month or more, the ALJ properly found that Williams had been engaging in substantial gainful activity since January 1, 1996. Williams does not challenge this finding, but he does argue that the ALJ erred in exclusively relying on the grids and in failing to use a vocational expert. Williams, therefore, effectively seeks a closed period of disability from onset on March 1, 1993 through January 1, 1996.

The ALJ determined that Williams suffered from the following combination of severe impairments: seizure disorder, migraine headaches, back, leg, and right knee pain. R. 27, Finding. 3. The ALJ noted that Williams had a "slightly reduced range of motion" on his right knee. Due to Williams's limited right knee motion and pain, the ALJ found that Williams could not lift more than ten pounds. Williams was limited to performing sedentary work. Moreover, the ALJ concluded that due to Williams's seizures, Williams was restricted from working around heights and dangerous machinery.

The ALJ found that the combination of Williams's impairments precluded Williams from returning to his previous employment. Once the ALJ found that Williams could not return to his prior work, the burden shifted to the Commissioner to establish that Williams could perform other work that exists in the national economy.

The ALJ was required to develop a full record regarding the vocational opportunities available to Williams. The Commissioner argues that he has met this burden through exclusive reliance on the grids. The Commissioner relies on Social Security Ruling 85–15 (SSR 85–15) for support. That Ruling states that

> a person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels.

*See* SSR 85–15, *reprinted* in West's Social Security Reporting Service, at 351. The

Commissioner's reliance on SSR 85–15 is misplaced.

Ruling 85–15 applies to claimants with no exertional impairments. *See Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir.1995) (as amended); *Doneworth v. Shalala*, No. 944290, 1996 WL 26922 (6th Cir. Jan.23, 1996). Furthermore, Ruling 85–15 considers such claimants in the larger universe of jobs existing at all exertional levels. It does not apply when the claimant suffers not only from severe exertional impairments, but also from non-exertional impairments. In such circumstance, a vocational expert is almost always necessary.

SSR 85–15 does not address an inability to work around any dangerous machinery in sedentary employment, where approximately 85% of the unskilled occupations that exist throughout the national economy are in the machine trades and benchwork categories. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.00(a) (1985); *see also Asher v. Bowen*, 837 F.2d 825, 827–28 (8th Cir.1988) (remanding because the ALJ could not assume that the majority of unskilled sedentary jobs took place in a pollution-free environment in light of regulations and case law suggesting that 85% of such jobs are in machine trades and benchwork categories often involving exposure to respiratory irritants); *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir.1986). In this case, Williams has physical, exertional limitations, as well as non-exertional limitations. The applicability of SSR 85–15 is thus not apparent on its face.

Williams's environmental restrictions preclude him from performing whole categories of jobs—he cannot perform any job that requires him to be exposed to heights or dangerous machinery. Williams, therefore, is unable to do unlimited types of sedentary work. Pursuant to Eleventh Circuit's ruling in *Marbury, supra*, the ALJ erred in exclusively relying on the grids and in failing to use a vocational expert. The Commissioner failed to meet his burden of proof. Having found that Williams suffered from exertional and non-exertional impairments, the ALJ was required to elicit vocational expert testimony.

Remand would be unnecessary in this case if all of the essential evidence were before the Appeals Council when it denied review, and if the evidence established without any doubt that Williams was disabled. This case does not meet the standard for outright reversal without remand. Rather, remand under Sentence Four is appropriate because the record is insufficient to affirm, but also is insufficient for the district court to find Williams disabled without any doubt. Reversal is appropriate because the Commissioner's decision is not supported by substantial evidence.

On remand, the Commissioner may choose to further develop a full and fair record of Williams's residual functional capacity. Using carefully framed questions, the Commissioner shall identify every specific non-exertional impairment (including pain), environmental and other restrictions on Williams ability to perform the full range of sedentary work during the relevant time period. The Commissioner shall obtain the opinion of a vocational expert as to Williams's ability to perform the "full range" of sedentary work in light of his exertional and non-exertional limitations.

## VI. CONCLUSION

For the reasons stated above, the decision of the Commissioner should be **REVERSED** and **REMANDED** under Sentence Four. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within eleven days of the date of its filing shall bar an aggrieved party from

a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal. Any party objecting to this decision shall file and serve a copy of the oral argument transcript within eleven days of this order.

Dated: Feb. 23, 2001.